Ex parte Ralph E. ANGLE, Petitioner,

v.

Arvid OWSLEY, Sheriff, Respondent.

No. 23112.

Kansas City Court of Appeals.

Missouri.

Dec. 7, 1959.

On Motion for Rehearing or to Transfer to
Supreme Court Denied Feb. 9, 1960.

John J. Manning, Robert S. Fousek, Kansas City, for petitioner.

Rogers Field, Gentry & Jackson, Richard K. Phelps, Kansas City, for respondent.

## PER CURIAM.

This is an original habeas corpus proceeding. Petitioner, Ralph E. Angle, was found guilty of contempt by the Circuit Court of Jackson County, Missouri, for having violated the terms of an injunction issued by that court. Punishment was fixed at a fine of $1,000 and imprisonment in the county jail for a term of 30 days. Upon issuance of our writ, he was released from custody of the sheriff under bail of $1,000, which was fixed by this court. We now consider whether to discharge the writ or make it permanent.

Since May, 1951, Mr. Harold W. Hinson has been owner and operator of a large grocery business located at 8239 Wornall Road, Kansas City, Missouri, commonly known as "The Henhouse". The evidence clearly shows that he has been at all times engaged in interstate commerce. Apparently in May, 1951, and prior thereto there had been some labor troubles at his place of business. He filed a petition in the Jackson County Circuit Court asking for an injunction and restraining order against Ray Thomas, president, Howard P. Root, business agent, and Carl Nothnagle, assistant business agent of Local Union No. 576, Amalgamated Meat Cutters and Butchers Workmen, an affiliate of the American Federation of Labor. Therein it was alleged that the defendants, in combination with others whose names were unknown, had entered into an unlawful combination to control and limit the trade in articles and things which were regularly bought and sold by the plaintiff, and had boycotted and were threatening to boycott any person buying from or selling products to plaintiff, all in violation of Sections 8301 and 8303, RSMo 1939 (now Secs. 416.010 and 416.030, V.A.M.S.). Therein it was asserted that another purpose of defendants was to coerce plaintiff's employees into becoming members of defendants' union, and to compel and coerce the plaintiff to discharge all his butchers and meat cutters who were not members of said union; that defendants interfered with and prevented the regular purchase of merchandise by plaintiff and by his customers, prevented and interfered with regular and orderly deliveries of merchandise, all in derogation of the laws of Missouri, and particularly of Section 2, Article I, Missouri Constitution, V.A.M.S., and that defendants had placed a picket line in front of plaintiff's place of business; that these pickets stopped vehicles carrying merchandise; that they prevented Brink's Inc. from picking up and carrying plaintiff's cash receipts to a bank and place of safekeeping; that said pickets shouted threatening remarks to customers who crossed the picket lines and subjected them to violent remarks and epithets; that defendants secretly and at night, scattered roofing nails in the drive and open area in front of plaintiff's place of business, causing damage to automobiles and the tires of plaintiff and his customers, and that defendants unlawfully and feloniously broke into and forced an entrance into plaintiff's place of business in the nighttime.

There was served upon defendants a notice and order to show cause why the injunction prayed for should not be granted. On the return day evidence was heard and in May, 1951, an injunction styled "Order for Temporary Injunction" was granted and issued. In May, 1951, motion was filed to dissolve the restraining order. It was overruled. In 1959, counsel representing the labor union filed a motion

to modify the restraining order, limiting it to restraint of force and violence. This motion was overruled. No further action was taken prior to the issuance of citation for contempt. Petitioner's basic position is that the court was without jurisdiction to issue the 1951 injunction because the Federal Government has pre-empted the field. Jurisdiction is a question that may be raised at any time. A judgment entered without jurisdiction is void and may be attacked collaterally. 21 C.J.S. Courts § 116, p. 177. But where, as here, the court has general jurisdiction of the subject matter and the person, the onus rests on petitioner to show lack of jurisdiction. This may appear from the record itself or it may be shown in any other way that is both proper and convincing.

The record does not contain a transcript of the evidence heard in 1951. The trial court, however, made written findings of fact, which were filed with and made a part of the order for the injunction. These findings of fact recited in part: that defendants established a picket line at plaintiff's place of business from 8:00 a. m. to 4:30 p. m. except on Sundays; that union truck drivers would not deliver merchandise to plaintiff's place of business nor would Brink's, Inc. cross the picket line to pick up cash receipts for deposit in the bank; that about 3:00 a. m. on May 4, 1951, while plaintiff was in the yard of his residence next door to the business and while he had his shotgun and revolver on his person, he saw defendants Root and Nothnagle drive into the parking lot at The Henhouse; that defendant Root got out of the automobile, went to plaintiff's processing house, had a bottle of gasoline in his hand and entered the processing house; that thereupon plaintiff yelled to defendant Root to come out or he would kill him, and Root did come out with his hands held above his head, and left the place of business; that both defendants Root and Nothnagle admitted they were at the processing house on said date; that they had a bottle of gasoline, and that they were shot at two or three times. The court

stated that while the picketing itself may have been peaceful, the acts of coercion, compulsion, force, duress and violence to compel plaintiff to employ union meat cutters and butchers are unlawful and these defendants cannot commit an unlawful act in connection with lawful picketing, and that defendants should not be permitted to threaten with coercion, force, violence or injury any citizen for the sake of compelling him to buy his peace. The injunction itself specifically enjoined defendants from (a) committing damage or injury to plaintiff's building; (b) from all manner of coercion, compulsion, force, violence and duress to compel plaintiff to employ only members of Local Union No. 576, as meat cutters and butchers; (c) from establishing, placing or maintaining any picket line or lines in and about plaintiff's store which would affect, destroy, injure, impede, hinder or interfere with the regular receipt or delivery of goods, merchandise and receipts to and from plaintiff's store or place of business in the usual and ordinary course of business. In the findings of fact this statement is made: "Temporary injunction is granted until the further order of this court".

This injunction, denominated "temporary", was never dissolved and was never formally declared to be permanent. Apparently, there were no serious difficulties, or at least any which brought the parties into court from May, 1951 until June, 1959, when picketing was resumed by one Clifton Stufflebeam, who had been an employee of The Henhouse until a few days before he began picketing. Some time during the years between 1951 and 1959, two of the original defendants, namely Ray Thomas, president, and Howard P. Root, business agent, died. The defendant Ralph E. Angle succeeded Thomas as president of the local union, and one Ted Wolff succeeded Root as business agent.

On June 25, 1959, Mr. Hinson filed his amended petition, praying that an order issue requiring Angle, Wolff and Stufflebeam to show cause why they should not

be held in contempt of the 1951 injunction. Stufflebeam was never actually brought in as a defendant or if he was, the issues as to him were disposed of in the circuit court. The trial court granted the order to show cause and Angle and Wolff, as defendants, were served with notice, and in July, 1959, the court heard evidence. We have a transcript of that testimony. On October 2, 1959, the court entered its order and judgment, finding defendant Angle (and Wolff) guilty of contempt and fixed the punishment of each at a fine of $1,000 and imprisonment in the county jail for a term of 30 days. A commitment thereunder was duly issued to the Sheriff of Jackson County, who took the defendant and Wolff into custody. Resultant thereto is the present proceeding.

In its order and judgment the court found: (1) That these defendants, although not parties at the time the original injunction was issued, nevertheless, had full knowledge of its existence and of the fact that said temporary injunction directed "that there should be no picketing of plaintiff's premises which would affect or interfere with the regular receipt and delivery of goods, merchandise and receipts to and from plaintiff's store or place of business in the usual and ordinary course of business", and that said defendants (2) "openly, actively and in concert, confederation and conspiracy with each other and with divers other persons to interfere with, obstruct, divide, defeat and violate the injunction order of this court theretofore made by actively participating in picketing of the store of the said plaintiff herein and by conspiring to so picket, intending and actually affecting, hindering and interfering with, obstructing and defiantly attempting to defeat the order of the court", and (3) defendants are guilty of contempt.

The evidence adduced at the 1959 hearing shows, we think, (a) that defendants actively participated in the picketing, sometimes in conjunction with Stufflebeam, and sometimes relieving him on the picket line when he went to meals; that defendants mostly sat in their automobile and "waved delivery trucks on by"; (b) that defendants furnished or caused to be furnished to Clifton Stufflebeam a union umbrella with the wording "Unfair", written thereon, which he carried while walking the picket line; (c) that on one occasion the defendants and Stufflebeam and two or three other persons congregated on the sidewalk or driveway in front of plaintiff's place of business; that plaintiff called the police and then advised defendants that they were not permitted to "mass picket". Thereupon defendants got in their cars and left. To summarize, as we read the 1959 record, we find no proof of violence or threats of violence, nor did the trial court declare that it found any.

■ It is petitioner's contention that first, the court was without jurisdiction to enter the original injunction for the reason that under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., Congress has pre-empted the field, leaving to the state courts only the authority to restrain violence and keep the peace, and that in this case there was no evidence of force and violence. Generally speaking, and subject to at least two limitations, we think this statement of the law is correct. Graybar Electric Co. v. Automotive, etc., Union, 365 Mo. 753, 287 S.W.2d 794; Garner v. Teamsters, Chauffeurs and Helpers Local Union, 346 U.S. 485, 74 S.Ct. 161, 98 L. Ed. 228; Guss v. Utah Labor Relations Board, 353 U.S. 1, 77 S.Ct. 598, 609, 1 L. Ed.2d 601. But from the findings of fact and the injunction decree as detailed supra, we are of the opinion that there was sufficient evidence to support the court's order enjoining violence and threats of violence. The parties agree that a state court does have authority to restrain acts of violence. There can be no question but that this is the law.

■ Counsel for Mr. Hinson, movant below, contend that a state court has authority to enjoin all picketing where the

evidence shows the picketing is enmeshed with force and violence, and calls to our attention the case of Milk Wagon Drivers Union, etc. v. Meadowmoor Dairies, 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836. In that case the evidence showed a long series of occurrences involving force and violence. There was proof of more than 50 instances of window-smashing, explosive bombs placed in the store, stench bombs dropped on five stores, three trucks wrecked, one set afire, another driven into the river, severe beatings of truck drivers, and shootings. The Supreme Court of Illinois ordered an injunction not only restraining force and violence but forbidding all picketing. The Supreme Court of the United States approved on the theory that these grave incidents of violence were so closely intermingled with the picketing that the court was justified in concluding that the only way it could stop the violence and maintain the peace would be to not only enjoin acts of violence, but to stop the picketing, also. It is true that passage of the National Labor Relations Act in 1947, came after this decision. However, the rule and reason of it has not been, so far as we have been able to learn, overturned. We believe there was sufficient evidence in 1951 of violence and threatened violence to justify and authorize the state circuit court to enjoin acts and threats of force and violence. To that extent we find the injunction to be valid. However, we find no substantial evidence of violence or threatened violence in 1959 and therefore no violation in this respect of the injunction. Hence there could be no contempt on that ground.

■ We do not believe that the violence, or force or threats thereof, as such appears to have existed in 1951, establishes a pattern of violence so intermingled with the picketing, as to lead to the reasonable conclusion that the only way to stop such violence and preserve the peace would be to stop all picketing. We cannot conclude that resumption of picketing seven years later and by different defendants would likely cause violence to recur so as to bring this case within the rule declared in the Meadowmoor case. Under the facts here, the case is more nearly akin to Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151, where the Supreme Court struck down an Arkansas injunction against both violence and picketing, limiting it to violence alone.

In Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, at page 691, 93 L.Ed. 834, a 1949 decision, which involved the Missouri statute against restraint of trade (now 416.010 and 416.030, V.A.M.S.) it was stated: " * * * it is plain that the basic issue is whether Missouri or a labor union has paramount constitutional power to regulate and govern the manner in which certain trade practices shall be carried on in Kansas City, Missouri. Missouri has by statute regulated trade one way. The appellant union members have adopted a program to regulate it another way. * * * We hold that the state's power to govern in this field is paramount, and that nothing in the constitutional guaranties of speech or press compels a state to apply or not to apply its antitrade restraint law to groups of workers, businessmen or others". The court approved the judgment of the Missouri court issuing an order restraining defendants from picketing plaintiff's plant.

■ However, in the Giboney case the purpose of the union was to force and coerce all wholesale ice dealers to refuse sales to independent ice peddlers and sell only to those who were union members. To hold that coercing all ice dealers in Kansas City to sell to one group and refuse sale to other groups, is in restraint of trade and contrary to the declared policy of Missouri is quite different from holding that picketing to require one grocery store to employ union labor is likewise in restraint of trade and such declared policy. We cannot apply the Giboney ruling to our case.

In its findings of fact and order, the court did not set forth or find the existence of forceful or violent acts, either so numerous or to such an extent as would justify application of the rule as laid down in the Meadowmoor case, nor is there any statement by the court that it found violence in such a degree as to require restraint of even peaceful picketing in order to stop violence and preserve the peace. To the contrary, the findings and order indicate that the court considered that it had power to enjoin peaceful picketing and such was its basis for entering its temporary injunction. It seems to follow .that on this point the injunction can be held to be valid only insofar as it restrains force and violence. Such conclusion is, we think, in accord with both the Meadowmoor and Youngdahl cases.

Based upon their pronouncements, it might be said that in 1951 and for many years thereafter, many courts, including numerous State Supreme Courts, inclined to the view that under many circumstances even peaceful picketing might be restrained, not only if necessary to prevent violence, but if the purpose was unlawful under the state statutes and precedents. However, the Supreme Court of the United States has declared otherwise and as late as April 20, 1959, in San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L. Ed.2d 775.

█ We must, therefore, and do hold (a) the 1951 injunction is valid only insofar as it restrains force and violence; (b) petitioner, under the evidence is not in violation of the injunction as so restricted, and (c) petitioner is not guilty of contempt.

The Writ of Habeas Corpus is made permanent. Defendant is discharged from custody and his bail bond is released.

On Motion for Rehearing or to Transfer to Supreme Court.

Respondent's motion for rehearing interprets our principal opinion as holding that in habeas corpus a final judgment is subject to collateral attack on the merits. That is not the effect of our opinion, and it should not be so construed.

The principal opinion holds and we declare it again briefly but precisely: First, peaceful picketing is a field pre-empted by the Federal Government. Second, the state courts were divested of jurisdiction in that field. Third, the injunction order shows on its face that it was in restraint of peaceful picketing—the pre-empted field —and outside the state courts' jurisdiction. Therefore, for want of jurisdiction, neither the injunction in this respect nor the commitment for contempt thereunder may stand.

Respondent's motion for rehearing or in the alternative for transfer to the Supreme Court is overruled.