**Phyllis Ann BELL,**
**Petitioner/Respondent,**

v.

**David Leslie BELL,**
**Respondent/Appellant.**

No. 74360.

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 19, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied
March 18, 1999.

Application to Transfer Denied
April 27, 1999.

Jack J. Cavanagh, Jr., Paul J. Vaporean, St. Louis, for petitioner.

David Leslie Bell, St. Louis, pro se.

CLIFFORD H. AHRENS, Judge.

Father and mother were married June 26, 1988. Their child was born May 7, 1988, prior to the parties' marriage. After the parties separated in August 1994, father and child moved to Arkansas. Mother had little contact with child until child's birthday, when she visited child in Arkansas. She returned to Arkansas in mid-May 1995 and brought child to Missouri. Upon arrival in Missouri, mother filed a petition for dissolution of marriage and custody of child.

On May 16, 1996, a family court commissioner issued an order for the dissolution of parties' marriage. This order was amended on August 26, 1996, by the same family court commissioner. The amended order granted primary custody of the child to mother, permitting father reasonable visitation of child. Father was ordered to pay child support, mother's attorney fees and two-thirds of the guardian ad litem fees. Father's appeal from the orders of the commissioner was transferred from this court to the Missouri Supreme Court to decide if the commissioner's order was appealable. *Bell v. Bell,* No. 71313, 1997 WL 759591, —— S.W.2d ——

(Mo.App. Nov.25, 1997). The case was consolidated on appeal and dismissed for lack of a final judgment. *Slay v. Slay,* 965 S.W.2d 845 (Mo. banc 1998). On May 7, 1998, the commissioner's findings and recommendations dated May 26, 1996, August 26, 1996 and February 20, 1997 were adopted in a judgment signed by Judge Melvyn Wiesman. Father appeals from this judgment.

In his first point, father argues that the trial court lacked subject matter jurisdiction to award custody of the minor child. The trial court's authority to hear a custody determination is characterized as jurisdiction of the subject matter. *State ex rel. Laws v. Higgins,* 734 S.W.2d 274, 279 (Mo.App.1987). Subject matter jurisdiction may be raised at any time, may not be waived and may not be conferred by consent of the parties. *Elbert v. Elbert,* 833 S.W.2d 884, 887 (Mo.App.1992). The circumstances upon which the trial court bases its subject matter jurisdiction must exist at the time the jurisdiction of the court is invoked. *Id.*

Father first contends that Missouri was not the home state of child and therefore the trial court lacked subject matter jurisdiction. The first paragraph of the court's decree states that "[t]he parties have been residents of this state for ninety (90) days next preceding the commencement of this action, and that thirty (30) days have elapsed since the filing of the petition therein ..." The court made no findings of fact upon the basis of which it assumed jurisdiction of the custody determination. In view of the purposes of the Uniform Child Custody Jurisdiction Act (UCCJA), as codified at section 452.445, RSMo 1994,[1] *et seq.,* it is a salutatory requirement for the court to make findings of fact concerning the basis alleged for its jurisdiction. *Higgins,* 734 S.W.2d at 277. Section 452.450.1(1), provides that a state has jurisdiction to make a child custody determination if the state was the "home state" of the child at the time of the commencement of the proceedings or if the state was the home state of the child within the prior six months and one parent continues to live in the state. In this case, child lived in Arkansas for nine

---

1. All statutory references are to RSMo 1994 unless otherwise indicated.

months with his father. Therefore, Arkansas was child's home state at the time the proceedings commenced. Section 452.450.1(1); *see also* Ark.Code Ann. section 9–13–203(a)(1) (1987).

Father then contends that as mother's verified pleadings only alleged "home state" jurisdiction, she is precluded from relying upon any other provision of section 452.450 to establish jurisdiction. This proposition is unfounded. We have previously held that

> [a]lthough [section] 452.480 requires that parties in child custody proceedings furnish certain information in their pleadings or by affidavit, that requirement is not jurisdictional.

\* \* \*

> Section 452.450 sets forth certain jurisdictional requirements. It contains no reference to [s]ection 452.480. Expressio unius est exclusio alterius. Jurisdiction attaches when the requirements of [section] 452.450 are met, not [section] 452.480.

*In re Marriage of Gohn*, 639 S.W.2d 413, 414 (Mo.App.1982).

Therefore, this court will examine the record to determine if there was a basis for the trial court's assumption of jurisdiction. *See Higgins*, 734 S.W.2d at 277. Under the UCCJA, the trial court has jurisdiction to make a child custody determination if

> it was in the best interest of the child that a court of this state assume jurisdiction because:
>
> (a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and
>
> (b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships....

Section 452.450.1(2). This standard does not refer to a choice of a parent, but to a choice of a forum. *Engel v. Kenner*, 926 S.W.2d 472, 475 (Mo.App.1996).

■ The primary purpose of the UCCJA is to ensure that custody determinations are made in accordance with, and in the state best suited to provide for, the welfare and best interests of the child. *State ex rel. In Interest of R.P. v. Rosen*, 966 S.W.2d 292, 299 (Mo.App.1998). Other purposes of the UCCJA include

> to avoid jurisdictional conflicts between states; to facilitate cooperation between states; to encourage stability for children; to ensure that a child's custody determination is made in the state with which the child and his family are most closely connected and where the most significant evidence concerning the child's custody is available; to deter forum shopping; and to ensure that states give full faith and credit to the custody determinations of other states, when made in accordance with the Act.

*Id.* The comments to the UCCJA make it clear that the bases of jurisdiction in section 452.450.1(1) through (4) are set out in descending preferential order, and that the first two bases for jurisdiction, home state and significant connection with the family

> establish the two major bases for jurisdiction. In the first place, a court in the child's home state has jurisdiction, and secondly, if there is no home state or the child and his family have equal or stronger ties with another state, a court in that state has jurisdiction. If this alternative test produces concurrent jurisdiction in more than one state, the mechanisms provided in sections [452.465 and 452.470] are used to ensure that only one state makes the custody decision.

*Id.* at 301–302 (quoting Unif. Child Custody Juris. Act section 3, comment, U.L.A. 144 (1988)).

The UCCJA, as adopted in Missouri and Arkansas, establishes that if more than one state is entitled to assert jurisdiction over the child, then other states should defer to the jurisdiction of the state in which suit is filed first. Section 452.465; Ark.Code Ann. section 9–13–206 (1987). No Arkansas court has exercised jurisdiction over child.

In this case, we find that the jurisdictional requirements of section 452.450.1(2) are met. Mother remained a resident of Missouri after

father moved to Arkansas. Child was born in Missouri and lived in Missouri until nine months before the instant action was filed. We find this is sufficient to establish the significant connection between child, mother and Missouri required under section 452.450.1(2)(a). *See In re Marriage of Panich,* 672 S.W.2d 718, 721 (Mo.App.1984).

In addition, substantial evidence concerning child's present or future care, protection, training and personal relationships is available in Missouri. *See Rosen,* 966 S.W.2d at 301. Much of child's family, including his mother, aunt, paternal grandparents and cousins reside in Missouri. Further, Missouri had evidence as to father's abusive behavior toward mother and child. Mother petitioned for a restraining order against father in 1994 and filed an adult abuse action in 1995. Missouri was the forum in which evidence could be found to show that father struck child in the face with an open hand and in the chest with a closed fist. This abuse occurred every seven to ten days from the date of child's birth until father took child to Arkansas. All of this evidence is relevant to child's future care, protection, training and personal relationships. We find it is in the best interest of the child for Missouri to determine child's custody.

Our determination is further supported by the following statutory provisions:

2. Except as provided in subdivisions (3) and (4) of subsection 1 of this section, physical presence of the child, or of the child and one of the litigants, in this state is not sufficient alone to confer jurisdiction on a court of this state to make a child custody determination.

3. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody.

Section 452.450.2 and .3; *see also* Ark.Code Ann. section 9–13–203(b) and (c) (1987).

■ Next, father contends that the trial court should have declined jurisdiction on the matter of custody because of the "unclean hands" doctrine. Father argues that mother took child from Arkansas while father was at work. Father also alleges that mother made false statements in the pleadings of an adult abuse action, provided the court with an incorrect address for which to notify him of an ex parte order of protection and stated that father could not be served with the pleadings for her dissolution action because she did not know his current address.

■ Section 452.475 provides that "[i]f the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in reprehensible conduct, the court may decline to exercise jurisdiction if this is just and proper under the circumstances." The "unclean hands" provision is a discretionary ground for denying jurisdiction and does not supercede the best interests of the child. *State ex rel. Rashid v. Drumm,* 824 S.W.2d 497, 502 (Mo.App.1992). The paramount issue is the welfare of the child, not the tactics of the parents. *In re Adoption of Z.T.H.,* 910 S.W.2d 830, 836 (Mo.App.1995).

Assuming, without deciding, that the acts of mother constituted "reprehensible conduct" in this case, the trial court did not abuse its discretion in taking jurisdiction. The issue of child's custody came before the court not only upon mother's petition, but also pursuant to father's counterclaim. That the trial court proceeded with the custody determination was not an abuse of discretion when both parties requested such action. *Dobyns v. Dobyns,* 650 S.W.2d 701, 707 (Mo. App.1983). Point denied.

■ In his second point, father contends that the trial court erred in striking father's pleadings in that no notice was given to father prior to the date of trial. He asserts that the court barred father's testimony as to his wishes for custody of child and limited his evidence to rebuttal evidence. He claims the court thereby failed to hear all available evidence of factors enumerated in sections 452.375.2(3) through (6) and (8). Our scope of review is for abuse of discretion. *J.B.C. v. S.H.C.,* 719 S.W.2d 866, 870 (Mo. App.1986). This standard applies both to a determination to strike pleadings and to a determination to deny the right to present witnesses. *Id.* The exercise of this discretion will not be disturbed upon review unless it is exercised unjustly. *Giesler v. Giesler,* 731 S.W.2d 33, 34 (Mo.App.1987). The rendition

of judgment which follows the disallowance of a pleading for failure to obey a discovery order does not come by default, in the ordinary sense, but is treated as a "judgment upon trial by the court." *In re Marriage of DeWitt,* 946 S.W.2d 258, 261 (Mo.App.1997); *J.B.C.,* 719 S.W.2d at 870.

On February 26, 1996, mother filed a motion to compel father to answer interrogatories and a request for the production of documents. In this motion, mother asked, among other remedies, that father's pleadings be stricken. At the February 29, 1996 hearing on the motion, the trial court ordered that father "make full [and] complete responses to all discovery without objection on or before 3/11/96." Father responded neither to mother's discovery requests nor to a letter dated March 11 requesting compliance with the discovery order.[2] On March 18, seven days after the deadline for which father was to comply with the trial court's prior order, mother filed a motion for sanctions, which alleged that no answer had been received by mother's counsel to either discovery request or the March 11 letter. Again, mother asked the court to strike father's pleadings. After a second hearing, the trial court issued an order dated March 25, 1996 which stated that "[father] given [sic] to 3–28–96 to formally respond to [mother's] motion to produce. [Father] will be precluded from producing any records not produced pursuant to [mother's] request." At trial, on May 2, 1996, mother made two pre-trial motions. First, mother asked the court to enforce its March 25 order excluding any documents not produced pursuant to mother's request for production of documents. This motion was granted. Second, mother asked that the trial court strike father's pleadings for failure to file either a statement of income

and expenses or a statement of property as required by local rule.[3] As father's attorney was not present at the trial, the trial court delayed ruling on mother's motion until it was determined that father had not filed the financial statements in question with the court.[4] Upon a determination that father's financial statement of income and expenses and statement of property had not been filed with the court, the trial court sustained mother's motion and father's pleadings were stricken.

Father argues that he was without reasonable notice of mother's oral motion at trial to strike his pleadings at trial. Father therefore asserts that the striking of his pleadings was unjust. We disagree. A court may award sanctions if a party

> fails to produce documents and tangible things as requested under Rule 58.01 [Production of Documents] ... and the documents and things are not timely produced ..., the court may, upon motion and reasonable notice to other parties, make such orders in regard to the failure as are just and among others the following:
>
> (1) An order refusing to allow the disobedient party to support or oppose designated claims or defenses or prohibit the disobedient party from introducing designated matters in evidence.
>
> (2) An order striking pleadings or parts thereof or staying further proceedings until the order is obeyed or dismissing the action or proceeding or any part thereof or[ ] rendering a judgment by default against the disobedient party.

Rule 61.01(d). Mother's oral motion was made on the record at trial, and thereby

**2.** Although we do not find a copy of mother's March 11 letter in the legal file, an entry dated April 3, 1996, in the Circuit Court Minutes of Proceedings states: "Copy of letter from [mother's] attorney to [father's] attorney filed."

**3.** We will not take judicial notice of a local rule not made part of the record. *Sher v. Chand,* 889 S.W.2d 79, 81 (Mo.App.1995). However, the legal file reflects that in both mother's request for interrogatories and her request for production of documents, she asked for the production of father's statement of income and expenses and his

statement of property. Additionally, the record reflects that mother requested the production of father's financial statements in a letter dated March 11. Father is not prejudiced by the reference of either mother or the commissioner to the local rule.

**4.** At trial, father stated that he had mailed the financial statements to his attorney and the court. Mother had neither received father's statement of income and expenses nor his statement of property.

conformed with the requirements of Rules 55.26(a) and 61.01(d).

The legal file in this case reflects a history of father's continuous frustration of mother's efforts to obtain discovery. Even after two hearings on mother's motions for sanctions, father never complied with mother's discovery requests. Mother's request for interrogatories and request for production of documents, served upon father on January 11, 1996, remained unanswered on May 2, 1996, the date of trial. The court showed patience and restraint for many months before finally ordering father's pleadings stricken. "The trial judge has an obligation to see that discovery rules are followed and to expedite litigation...." *Restorative Services, Inc. v. Professional Care Centers, Inc.*, 793 S.W.2d 141, 144 (Mo.App.1990). Father had been placed on notice that the striking of his pleadings was among the sanctions sought by mother to enforce her discovery requests. We find that when father had been first alerted to the possibility of such sanctions for at least three months, oral notice on the date of trial requesting that father's pleadings be stricken was sufficient to meet the requirements of Rules 61.01 and 44.01.

 From the trial record, it is evident that father persisted in a course of action which hindered, delayed and complicated the proceedings. The court responded in a reasonable and responsible manner and we find no merit in father's contention that the court abused its discretion in striking father's pleadings. *See Giesler*, 731 S.W.2d at 35. Point denied.

In father's third point on appeal, he contends that the dissolution decree was not supported by substantial or credible evidence. In his point on appeal, father claims that

the evidence of [mother] was proven to be not credible by the perjury of [mother] and the [court] could not have reasonably relied upon that evidence to award primary custody to [mother], to establish values of property, to apportion debt obligations, or to award attorney fees and order guardian ad litem fees.

The order of the court awarded primary custody of the child to mother. The court decreed that the debts to be paid by mother were as follows:

(1) 1991 Toyota Corolla

(2) Mortgage on residence at 9408 Harden payable to Gershman Investment

(3) United States Bankruptcy Trustee

(4) All other unlisted debts incurred by her since the date of separation.

Father was responsible for "[a]ll unlisted debts incurred by him since the date of separation." Mother's attorney fees in the amount of $1,023.00 were found to be reasonably chargeable to father. Finally, the guardian ad litem's fees were charged to the parties in unequal amounts: $1,081.20 to mother and $2,098.80 to father. Neither party was awarded maintenance.

 We will affirm the court's decree if it is supported by substantial evidence, is not against the weight of the evidence and does not erroneously declare or apply the law. *Osmun v. Osmun*, 842 S.W.2d 932, 934 (Mo.App.1992). We will affirm the court's determination of custody unless we are firmly convinced the welfare of the child requires some other disposition. *Id.* at 936. The primary consideration in determining custody is the best interests of the child. *Id.* Nothing in the record indicates the award of primary custody to mother was not in child's best interests, and we are not convinced his welfare requires a different disposition.

 Father then argues that there was insufficient evidence to support the values of marital property in the court's findings of fact. We defer to the trial court's determination of credibility, viewing the evidence and inferences in the light most favorable to the decree and disregarding all contrary evidence and inferences. *Halupa v. Halupa*, 980 S.W.2d 325, 329 (Mo.App.1998). The trial court is free to believe or disbelieve all, part or none of the testimony of any witness. *Id.* Mother submitted a statement of property and testimony was adduced at trial as to the value of the marital property. We find that the court's determination of the value of marital property was supported by substantial evidence.

Father also argues that the court improperly apportioned the parties' debt obligations. Initially we note that although it is a commendable practice, courts are not obligated to allocate marital debts. *Vehlewald v. Vehlewald,* 853 S.W.2d 944, 949 (Mo.App. 1993). Debts of the spouses are not marital property. *Id.* The existence and payment of debt is a factor the court should consider in a fair division of the marital property. *Id.* The court awarded all marital debts to be paid by mother except for those incurred by father after the date of separation. We find no error in the court's division of the parties' debts.

Father further argues that the court improperly awarded attorney fees to mother. The award of attorney fees will be reversed only upon a finding of abuse of discretion after the consideration of the factors provided in section 452.355. *Halupa v. Halupa,* 943 S.W.2d 272, 278 (Mo.App.1997). After a review of the record, we are unable to find that the trial court abused its discretion in awarding mother attorney fees.

Finally, father argues that the court improperly ordered him to pay guardian ad litem fees. Section 452.423.4 provides that the court "in its discretion, may award [guardian ad litem] fees as a judgment to be paid by any party to the proceedings." The guardian ad litem testified at trial and filed his statement of attorney fees with the court. The award of two-thirds of guardian ad litem fees as a judgment against father is supported by substantial evidence and is clearly authorized by section 452.423.4. *Guier v. Guier,* 918 S.W.2d 940, 953 (Mo.App.1996). The court did not err or abuse its discretion in granting judgment against father in the amount of $2,098.80 to pay the guardian ad litem. Point denied.

The judgment of the trial court is affirmed.

JAMES A. PUDLOWSKI, P.J., and WILLIAM H. CRANDALL Jr., J., concur.