In re The MARRIAGE OF Christy Lynn DOOLEY, and Timothy Lee Dooley.

Christy Lynn Dooley, Respondent,

v.

Timothy Lee Dooley, Appellant.

No. 23074.

Missouri Court of Appeals, Southern District, Division Two.

March 29, 2000.

748

Robert M. Ramshur, Michael B. Dudley, Ramshur Law Office P.C., Piedmont, for appellant.

John M. Albright, Moore & Walsh, L.L.P., Poplar Bluff, for respondent.

## ROBERT S. BARNEY, Judge.

Timothy Lee Dooley ("Husband") appeals from the overruling and denial of his Rule 74.06(b) "Motion to Vacate or Set Aside Judgment for Dissolution of Marriage." The record shows that Husband and Christy Lynn Dooley ("Wife") were married on May 8, 1993, in Fort Bragg, North Carolina. On November 13, 1996, Wife filed a Petition for Dissolution of Marriage in the Circuit Court of Wayne County, Missouri, in which she alleged that she was and had been a resident of the State of Missouri "for more than ninety (90) days next preceding the filing of [the] petition" and was "now residing at Rt. # 4, Box 4049, Piedmont, Wayne County, Missouri 63957." The petition further alleged that the couple had one child, Charles Franklin Dooley ("Charlie"), born February 10, 1994, and that Wife had "no information of any custody proceedings regarding the child in this or any other state." Wife further alleged in her petition that Husband "is a resident of the State of Hawaii, presently residing at Alpha Co., 1 st ½1 st Light Infantry Division, Schoffield Barracks, Island of Oahu, Hawaii" and that she and Husband "separated on or about the 25 th day of September, 1996."

On January 7, 1997, the cause came on for a hearing on Wife's motion for custody and child support of Charlie "during the pendency of this case or until further order of [the] court." The court noted that there was no pleading in the file on behalf of Husband, to which Wife's attorney replied, "[t]hat's correct, your Honor. [Husband] has not had anyone enter an appearance for him or file an answer, nor has he done so himself." The court then suggested, "[r]ather than take up your motion for temporary custody and child support pendente lite, why not take up the entire case since he's in default." Wife's attorney agreed and, in response to questioning from the court, stated that there had been personal service on Husband in Wayne County by the Sheriff of Wayne County. Wife's attorney went on to inform the court that subsequent to the suit being filed by Wife, Husband filed a similar suit in Hawaii. The Missouri court observed that the petition for dissolution was a "verified petition" and that the court record contained "personal service signed by the deputy sheriff of this county" and stated that "[f]or the record, this court has examined the pleadings and the contents of the file and this court is assuming jurisdiction of this case."

The court heard testimony from Wife, more fully discussed, *infra*. Following Wife's testimony, the court noted for the record that Husband had not requested any relief "under the Soldiers and Sailors Civil Relief Act," nor were any pleadings filed on behalf of Husband and, therefore, "[Husband] has been in default since approximately December 24 th of 1996." In the formal judgment of dissolution, filed January 14, 1997, the court again found that Husband, having been "personally served on November 23, 1996, in Wayne County, Missouri, and having entered no responsive pleadings nor requested relief under the Soldier's and Sailor's Relief Act, therefore being in default, appears not." The court ordered, *inter alia*, that Wife should have "primary legal and physical care, custody and control of [Charlie]," subject to restricted and supervised visitation by Husband upon forty-eight hours prior notice to Wife of the intention to visit. The court also ordered Husband to pay fifty dollars per week in support of Charlie; awarded Husband the parties' automobile of which he was in possession subject to debt; ordered that all personal property and items were to be awarded to whomever presently possessed the item of personal property and ordered that Wife be restored to her maiden name.

On February 2, 1999, a little over two years after the Judgment of Dissolution was filed, Husband filed a non-verified, Rule 74.06(b) "Motion to Vacate or Set Aside Judgement for Dissolution of Marriage" ("motion to vacate") in the Wayne County Circuit Court.[1] In his motion to vacate, Husband made no challenge to the Missouri court's assumption of personal jurisdiction over him. He alleged, instead, that the "Judgment Decree of Dissolution of Marriage ... was void on grounds that [the circuit court of Wayne County] lacked *subject matter* jurisdiction over issues of the custody and support for [Charlie]."[2] (emphasis added). Husband further moved to vacate the judgment of dissolution on the ground "that the Judgment was irregular in that [Husband] was not notified of [Wife's] intent to call for hearing the issues of the petition." In support of his motion, Husband alleged, *inter alia*, the following:

2. Up until September 1996, [Wife], [Husband], and [Charlie] lived in the State of Hawaii. In September 1996, [Wife] moved to the State of Missouri. On November 24, 1996, [Husband] traveled from Fort Polk Louisiana Military Base to Piedmont, Missouri, stayed approximately 15 minutes, picked up [Charlie] and traveled to Tennessee, the residence of his parents. On December 3, 1996, [Husband] and [Charlie] returned to Hawaii.

3. On December 9, 1996, [Husband] filed for the Dissolution of Marriage in the State of Hawaii. Said complaint for Dissolution of Marriage and summons was served by certified mail upon [Wife] on December 17, 1996.

4. On December 13, 1996, the attorney for [Wife] herein mailed her notice to take up for hearing before this court, [Wife's] Motion for Temporary Custody and Child Support Pendente Lite, for Tuesday, January 7, 1997, at 9:00 a.m., by mailing same to Alpha Company, First 121st Light Infantry Division, Schoffield Barracks, Island of Oahu, Hawaii.

From our examination of the docket sheets, it does not appear that a hearing was held on Husband's motion to vacate. It appears that the motion court had each counsel provide the motion court pertinent case law and then made its decision. It further appears that Husband's motion counsel also provided the court with an "Order Granting [Husband's] Motion for Post–Decree Relief Filed May 13, 1997[,]" authored by the "Family Court of the First Circuit, State of Hawaii," and signed by the Honorable Robert M. Browning, Judge of that court. In this Hawaiian court order, Judge Browning noted that Wife had filed a "Motion to Dismiss, Either in Toto, or as to Child Related Issues, For Lack of Jurisdiction or, in the Alternative, For Inconvenient Forum" on January 27, 1997. This Hawaiian court order further set out that a hearing had been held in Hawaii on Wife's motion to dismiss on

---

1. Rule 74.06(b) reads, as follows:
[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

Rule 74.06(b). All rules references are to Missouri Court Rules (1999), unless otherwise noted.

2. This Court has defined "subject matter jurisdiction" as " 'the power to adjudge concerning the general question involved, and if a complaint states a case belonging to a general class over which the authority of the court extends, that court possesses 'subject matter jurisdiction'.' " *In re Marriage of Panich*, 672 S.W.2d 718, 720–21 (Mo.App.1984)(quoting *Corning Truck & Radiator Serv. v. J.W.M. Inc.*, 542 S.W.2d 520, 527 (Mo.App.1976)).

February 5, 1997, and that the motion court (Judge Bode Uale presiding) denied the motion, finding that Hawaii and not Missouri was Charlie's "home state." Judge Uale determined that he would not give the Missouri Judgment of Dissolution "full faith and credit" as to the custody of Charlie, as it appeared "that [Husband] ... was not properly served and did not have notice of the Missouri Divorce proceedings. ..."

With these findings at hand, Judge Browning determined, *inter alia*, that Hawaii had jurisdiction over Charlie, that Husband was granted sole legal and physical care, custody and control of Charlie "[u]ntil further order of the Court," and that Wife was "[e]njoined and [r]estrained" from removing Charlie from the city of Honolulu.

The docket sheets from the Circuit Court of Wayne County, Missouri, reflect that Husband's motion to vacate was called on May 18, 1999, and that it was taken under submission for ruling by the motion court. The following entry appears in the docket sheets on June 2, 1999:

> Court in chambers takes up motion to vacate or set aside judgment. The Court finds that the child as well as his mother have a significant connection with the state of Missouri and Missouri is the child's home state accordingly the court has jurisdiction herein over said child. It is the judgment and order of this Court that the motion to vacate or set aside judgment is overruled and denied. So ordered. Order Final. Time is of the essence.

This docket entry is signed "W.C. Seay." It is from this order that Husband appeals.

Husband's appeal posits six points of motion court error. In his first point, he claims the trial court erred in overruling his motion to vacate or set aside the judgment of dissolution because it was without subject matter jurisdiction in that Wife's petition "failed to plead the jurisdictional fact of Missouri residency for either of the parties." In his second claim of error,

Husband claims the trial court lacked subject matter jurisdiction in that Wife's petition "failed to plead the jurisdictional facts required under the Uniform Child Custody Jurisdiction Act." In his third point, Husband claims the motion court erred in its denial because "the trial court did not make express findings of jurisdictional facts prior to entering judgment" thus depriving Husband of due process of law. In his fourth point, Husband claims the motion court erred in its denial of his motion because the trial court "being advised of a simultaneous child custody proceeding in ... Hawaii[,] failed to stay the proceedings in Missouri. ..." In his fifth point, Husband claims that the motion court erred in denying his motion to vacate or set aside because the default judgment "was entered without personal jurisdiction over [Husband] because service of process was had by leaving a copy of the summons and petition at the residence of [Wife]. ..." In his sixth and final point, Husband claims motion court error in denying his motion to vacate or set aside the judgment of dissolution because the dissolution court "permitted a default judgment on the merits of the petition to be entered without notice to the Appellant." We shall discuss each point *seriatim*.

■ "The decision to set aside a default judgment lies within the trial court's discretion, and its decision will not be overturned unless the record indicates an abuse of that discretion." *Yerkes v. Asberry*, 938 S.W.2d 307, 309 (Mo.App.1997). "However, since courts favor a trial on the merits, discretion not to set aside a default judgment is narrower than discretion to set it aside." *Id.* "Thus, appellate courts are more likely to interfere when trial court has denied the motion to set aside the default judgment." *Id.*

■ In examining Husband's Rule 74.06(b) motion to vacate and his memorandum in support of such motion, we observe that not all of the contentions posited by Husband on appeal were pre-

sented to the motion court below. In his motion to vacate and memorandum, Husband asserts only two claims of error: (1) that the trial court "lacked subject matter jurisdiction over issues of the custody and support of [Charlie]," and (2) that the default judgment "was irregular in that [Husband] was not notified of [Wife's] intent to call for hearing the issues of the petition." There is no mention in Husband's motion to vacate of the claims of error that he posits in Points One, Three, Four or Five of his appeal. *See supra.* As a general rule "[a] party cannot try his case on one theory in the trial court and, if unsuccessful, rely upon a different theory on appeal." *Anderson v. Anderson,* 869 S.W.2d 289, 292 (Mo.App.1994); *see also Clark v. Clark,* 926 S.W.2d 123, 126–27 (Mo.App.1996); *Gibson v. White,* 904 S.W.2d 22, 26 (Mo.App.1995). Accordingly, we will not review Points Three, Four or Five.

■ As to Point Five (positing error based on lack of personal jurisdiction over Husband by the dissolution court), we are constrained to point out that we recognize that a "personal judgment rendered by a court without personal jurisdiction over the defendant is void and may be attacked collaterally," *Crouch v. Crouch,* 641 S.W.2d 86, 90 (Mo. banc 1982); and that a defendant " 'is always free to ignore the judicial proceedings, risk a default judgment and then challenge that judgment on jurisdictional grounds in a collateral proceeding.' " *Id.*(quoting *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982)). However, "the onus rests on petitioner to show lack of jurisdiction . . . [by referencing] the record itself or . . . in

any way that is both proper and convincing." *Angle v. Owsley,* 332 S.W.2d 457, 459 (Mo.App.1959). Here, Husband availed himself of the procedural opportunity provided by Rule 74.06(b) to attack the dissolution court's default judgment against him on various grounds other than lack of personal jurisdiction over him. No challenge was made in his motion to vacate based on lack of personal jurisdiction over him. Accordingly, he waived his right to challenge the default judgment on the basis of lack of personal jurisdiction. *See Gibson,* 904 S.W.2d at 26; *see also* parallel discussion in *Clark v. Clark,* 926 S.W.2d at 126–27("Mr. Clark admits he never raised the defense of lack of [personal] jurisdiction in the trial court under Rule 74.06. . . . It is only on appeal after losing the motion on the merits, that he first argues that the trial court was without jurisdiction. . . . By defending on the merits without raising these issues below, Mr. Clark waived them and cannot raise them in this Court").[3]

■ Turning now to Husband's allegation of error encompassed in his Point Six (permitting entry of judgment without prior notice of proceedings), we observe that Rule 74.06(c) sets out that "[t]he motion shall be made within a reasonable time and for reasons (1) and (2) and (3) of subdivision (b) not more than one year after the judgment or order was entered." Rule 74.06(c). We note from the record that Husband filed his motion to vacate over two years after the default judgment of dissolution was entered. We further observe that in his Points Three, Four and Six, Husband premises his allegations of error on the basis of an irregular judgment.[4]

3. As a general rule, "in personam jurisdiction is not necessary to dissolve a marriage or determine child custody." *Glanzner v. State, DSS,* 835 S.W.2d 386, 390 (Mo.App.1992); *In re Marriage of Southard,* 733 S.W.2d 867, 868 (Mo.App.1987).

4. "An irregular judgment for purposes of Rule 74.06(b) is defined as a judgment that is 'materially contrary to an established form and

mode of procedure for the orderly administration of justice.' " *Beatty v. Conner,* 923 S.W.2d 455, 457–58 (Mo.App.1996)(quoting *Burris v. Terminal R.R. Ass'n,* 835 S.W.2d 535, 538 (Mo.App.1992)). "An irregularity must render the judgment contrary to a proper result." *Id.* "The rule reaches only procedural errors which, if known, would have prevented entry of a judgment.' " *Id.*

We have already determined that we need not review Points Three, Four and Five due to Husband's failure to bring before the motion court the allegations of error relating to these points. Additionally, by failing to file his motion to vacate or set aside within "one year after the judgment or order was entered," Rule 74.06(c), Husband has not preserved his contentions of error in Point Six. *See Beatty*, 923 S.W.2d at 457; *Orrock v. Crouse Realtors, Inc.*, 813 S.W.2d 929, 931 (Mo.App.1991).

Additionally, we observe that Husband's motion was not verified. Generally, "a motion to set aside a judgment cannot prove itself." *Clark*, 926 S.W.2d at 127. "Even if a motion contains sufficient allegations of fact to support setting aside a judgment, the motion cannot normally be granted unless it is verified, or supported by affidavits or sworn testimony produced at a hearing on the motion." *Id.* Nevertheless, in the instant matter "the record was not devoid of competent evidence." *Id.* The fact that Husband's motion was not verified does not hamper our determination of whether the dissolution court had subject matter jurisdiction to enter its default judgment, particularly where the motion court had before it the pleadings and testimony relating to the dissolution of marriage action. *See Id.* Accordingly, we shall review Husband's Point One, although not presented to the motion court below. We do so because he complains that the dissolution court was without *subject matter* jurisdiction in that Wife's petition "failed to plead the jurisdictional fact of Missouri residency for either of the parties." *Groh v. Groh*, 910 S.W.2d 747, 749 (Mo.App.1995)("a party may raise the issue of lack of subject matter jurisdiction at any time, and it may be raised for the first time on appeal").[5] In like manner, we

shall also review Husband's second point, because Husband also challenged the subject matter jurisdiction of the dissolution court to consider the issue of child custody.

In his first point, Husband claims that "the trial court was without subject matter jurisdiction over the dissolution of marriage action because [Wife's] petition failed to plead the jurisdictional fact of Missouri residency for either of the parties." "A dissolution of marriage decree is void for lack of subject matter jurisdiction if it is entered in a state in which neither of the parties to the action are domiciled at the commencement of the action." *Lewis v. Lewis*, 930 S.W.2d 475, 477 (Mo.App. 1996).

In Missouri, under section 452.305.1:

1. The circuit court shall enter a decree of dissolution of marriage if

(1) The court finds that one of the parties has been a resident of this state ... for ninety days next preceding the commencement of the proceeding and that thirty days have elapsed since the filing of the petition;

. . . .

§ 452.305.1. "The issue of residency in Missouri as set forth in § 452.305 is 'a jurisdictional fact which must be pleaded and proved.'" *Goeman v. Goeman*, 833 S.W.2d 476, 478 (Mo.App.1992)(quoting *Berry v. Berry*, 620 S.W.2d 456, 457 (Mo. App.1981)). "Missouri cases generally hold that the term 'residence' as used in § 452.305 is equivalent to 'domicile.'" *Id.* "To establish residence in Missouri, a plaintiff must show 'actual personal presence in the new place *and the intention to remain there, either permanently or for an indefinite time, without any fixed or*

---

**5.** Section 512.160.1, RSMo 1994, reads as follows:

Apart from questions of jurisdiction of the trial court over the subject matter and questions as to the sufficiency of pleadings to state a claim upon which relief can be granted or a legal defense to a claim, no

allegations of error shall be considered in any civil appeal except such as have been presented to or expressly decided by the trial court.

§ 512.160.1, RSMo 1994. All statutory references are to RSMo 1994.

**755**

*certain purpose to return to the former place of abode.'" Id.*(quoting *Scotton v. Scotton*, 359 S.W.2d 501, 507 (Mo.App. 1962)).

■ In her dissolution of marriage petition, Wife stated that she was and had been "a resident of the State of Missouri for more than ninety (90) days next preceding the filing of this Petition...." Husband, however, points out that later in her petition Wife stated that "[d]uring the past six months, [Charlie] has resided with both parents in Hawaii until the date of separation, September 25, 1996, and since that date he has resided with [Wife] in Piedmont...." Husband asseverates that by making such statement, Wife was, in effect, stating that she did not obtain residency in Missouri until September 25, 1996, only forty-nine days prior to the filing of Wife's petition on November 13, 1996. We disagree.

■ In her petition, Wife clearly pleaded that she had been a Missouri resident for more than ninety days. We do not believe that her careless use of the word "resided" in those allegations of her petition relating to Charlie invalidates her previous averment.[6] We are confirmed in our determination by Wife's testimony at the dissolution hearing in which she stated that she "resided" in Piedmont, Missouri, and that she had been "a resident of the State of Missouri for more than ninety days next preceding the filing of the petition." She further acknowledged that she "had been out of Missouri for part of that ninety days, but that was temporarily and in an effort to reconcile [her] marriage, which did not work...." We find no error in the dissolution court's exercise of

subject matter jurisdiction over the dissolution of marriage action. Husband's first point is denied.

Turning to Husband's second point, he claims the trial court erred in "overruling [his] motion to vacate ... in that [it] was without subject matter jurisdiction over the issues of child custody because [Wife's] petition failed to plead the jurisdictional facts required under the Uniform Child Custody Jurisdiction Act." We agree.

■ The primary purpose of the Uniform Child Custody Jurisdiction Act ("UCCJA"), codified at section 452.440, *et seq.*, "is to ensure that custody determinations are made in accordance with, and in the state best suited to provide for, the welfare and best interests of the child." *Bell v. Bell*, 987 S.W.2d 395, 398 (Mo.App. 1999). " 'The general rule is that a court's acquisition of jurisdiction over a case depends on the facts existing at the time its jurisdiction is invoked.' " *State ex rel. Laws v. Higgins*, 734 S.W.2d 274, 278 (Mo.App.1987)(quoting 20 Am.Jur.2d *Courts* § 142 (1965)). The burden of establishing a prima facie basis of jurisdiction is on the proponent of that jurisdiction. *State ex rel. Rashid v. Drumm*, 824 S.W.2d 497, 505 (Mo.App.1992). Section 452.450 encapsulates the jurisdictional requirements of the UCCJA.[7] Under section 452.450.1:

1. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

(1) This state:

---

6. Pleadings "are to be given a liberal construction, and are to be accorded their reasonable and fair intendment. A pleading is not to be held insufficient merely because of a lack of definiteness or certainty in allegation or because of informality in the statement of an essential fact." *Stanfield v. National Elec. Contractors Assoc.*, 588 S.W.2d 199, 200 (Mo.App.1979)(quoting *Merriman v. Caton*, 395 S.W.2d 106, 109 (Mo.1965)).

7. "The comments to the UCCJA make it clear that the bases of jurisdiction in section 452.450.1(1) through (4) are set out in descending preferential order, and that the first two bases for jurisdiction, home state and significant connection with the family 'establish the two major bases for jurisdiction.' " *Bell*, 987 S.W.2d at 398(quoting UCCJA § 3, comment, U.L.A. 144 (1988)).

(a) Is the home state of the child at the time of commencement of the proceeding; or

(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or

(2) It is in the best interest of the child that a court of this state assume jurisdiction because:

(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this state and:

(a) The child has been abandoned; or

(b) It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse, or is otherwise being neglected; or

(4) It appears that no other state would have jurisdiction....

§ 452.450.1. The only portions of this section that are relevant to the case before us are subsection (1) relating to "home state" jurisdiction, and subsection (2) relating to jurisdiction based on the "best interest" of the child in question.[8]

■ As to whether or not Wife adequately demonstrated that Missouri was Charlie's "home state," we observe that the UCCJA defines "home state," in pertinent part, as:

> the state in which, immediately preceding the filing of custody proceeding, the child lived with ... a parent ... for at least six consecutive months.... Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

Section 452.445(4). Therefore, considering Mother continues to live in Missouri, we must first determine whether Missouri was Charlie's "home state" at the time of the commencement of the proceeding or within six months prior to the commencement of the proceeding.[9]

■ As noted *supra*, Wife filed her verified petition for dissolution of marriage on November 13, 1996, and the dissolution hearing came before the trial court on January 7, 1997. In her testimony at the dissolution hearing, Wife acknowledged that "for the better part of the previous two years" Piedmont, Missouri had been "[her] address as well as [her] son's address." However, in her petition for dissolution, Wife made the following allegation as to Charlie's residence: "[d]uring the past six months, [Charlie] has resided with both parents in Hawaii until the date of separation, September 25, 1996, and since that date he has resided with [Wife] in Piedmont ... Missouri." Similarly, Wife acknowledged at the dissolution hearing that for "the past six months ... Charlie has lived approximately one half the time in Hawaii during attempted reconciliation and one half the time here in the State of Missouri."[10] Further still, we find the following testimony:

---

8. We note that while the dissolution court did make the comment at the default hearing that "[t]his court considers this matter sort of an emergency situation" and made other comments referring to the "emergency" nature of the case, the court listed §§ 452.450.1(1), (2) and (4) as bases for jurisdiction while not listing § 452.450.1(3) which contains the "emergency" provision. Furthermore, the evidence does not show that the child was "physically present in the state" which is a condition of assuming "emergency" jurisdiction. § 452.450.1(3).

9. A less cumbersome phrasing of this latter precept is that once a state has become the "home state" of the child under the UCCJA, such status will remain with that state for six months after the child departs as long as one parent continues to live there. *See Davis v. Davis,* 799 S.W.2d 127, 135 (Mo.App.1990).

10. We observe that Wife's attorney also informed the trial court judge, at the beginning of the default hearing, that "for the entire past two years that the child has been in this world, and particularly for the past six

Q: (Wife's Attorney) In fact, in 1995, when you were here for six or eight months, you also filed a petition for dissolution of your marriage to Mr. Dooley at that time as well, didn't you?

A: (Wife) Yes, Ma'am.

Q: And at that time, at the end of that period of time you asked me to dismiss it because you returned then again for a couple of months to Hawaii for an attempted reconciliation?

A: Yes, Ma'am.

There is no testimony as to whether Charlie returned to Missouri with Wife in 1995.

It is difficult to reconcile the foregoing testimony. While Wife testified that "for the better part of the previous two years" Piedmont, Missouri had been "[her] address as well as [her] son's address," there was no elaboration in her testimony relative to what specific portion of the previous two years she may have absented herself from Piedmont for her attempts at reconciliation.[11] This lack of specificity becomes fatal in light of Wife's burden of showing that Missouri was Charlie's "home state" at the time of the commencement of the proceeding or within six months prior to the commencement of the proceeding, particularly since under the UCCJA "[a] court generally cannot make a custody determination if a child has lived out of the state for more than six months." *Payne v. Weker*, 917 S.W.2d 201, 204 (Mo.App.1996). Our review of the sparse record and the totality of circumstances relating to the minor child's absences from Missouri leads us to conclude that Wife did not meet her burden of proof of establishing that Missouri was Charlie's "home state," under

the provisions of either § 452.450.1(1)(a) or (b).

We now turn to a determination of whether it was in the Charlie's "best interest" that Missouri assume jurisdiction because "the child and at least one litigant, have a significant connection with this state," § 452.450.1(2)(a), and there is available in Missouri "substantial evidence concerning the child's present or future care, protection, training, and personal relationships." § 452.450.1(2)(b); *see Piedimonte v. Nissen*, 817 S.W.2d 260, 270 (Mo. App.1991). "This standard does not refer to a choice of a parent, but to a choice of a forum." *Bell*, 987 S.W.2d at 398. "[J]urisdiction exists [in this context] only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state." *Payne*, 917 S.W.2d at 204(quoting *Timmings v. Timmings*, 628 S.W.2d 724, 726–27 (Mo.App.1982)). " 'The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state.' " *State ex rel. Laws*, 734 S.W.2d at 278 (quoting *Mace v. Mace*, 215 Neb. 640, 341 N.W.2d 307, 312 (1983)). The "relative fitness of the parents for the best interest of the child" is a substantive matter to be determined only after jurisdiction to hear the case has been established. *Id.* The general principle that a court's acquisition of jurisdiction over a case depends on the facts existing at the time its jurisdiction is invoked is as applicable to a determination of jurisdiction under section 452.450.1(2) as it is under section 452.450.1(1). *See Id.*[12]

months, ... the child has spent equal amounts of time, truly equal, in Hawaii and in Missouri."

11. "The UCCJA does not provide any statutory definition of 'temporary absence' for the purposes of § 452.445(4)." *In Re S.M.*, 938 S.W.2d 910, 917 (Mo.App.1997). "In comparing the different approaches to resolving the temporary absence issue, the totality of

the circumstances test is best suited to adequately deal with the variety of situations which occur...." *Id.* at 918.

12. Although Wife's petition did not allege jurisdiction under § 452.450.1(2), Wife was not precluded from proving jurisdiction under that section at her dissolution hearing. *See Bell*, 987 S.W.2d at 398.

█ Our review of the dissolution proceedings does not persuade us that Mother provided the court with substantial evidence that Charlie and she had a "significant connection with this state" and there was available in Missouri "substantial evidence concerning [Charlie's] present or future care, protection, training, and personal relationships." *See* § 452.450.1(2)(a) & (b). Mother certainly testified to the fact that she and Charlie had contact with this state, but we are not convinced that she met her burden of proving "maximum rather than minimum contact with the state." *See State ex rel. Laws,* 734 S.W.2d at 278. Wife's petition made no reference to Charlie having a significant connection to Missouri. As noted, *supra,* her only allegation in her petition as to Charlie's connection to Missouri was that "[d]uring the past six months, the minor child has resided with both parents in Hawaii until the date of separation, September 25, 1996, and since that date he has resided with Petitioner in Piedmont, Wayne County, Missouri." Furthermore, as previously set out, at her dissolution hearing Wife acknowledged that for "the past six months ... Charlie has lived approximately one half the time in Hawaii during attempted reconciliation and one half the time here in the State of Missouri," thereby reaffirming the claim made in her petition. Wife's further testimony that "for the *better part* of the previous two years" Piedmont, Missouri had been "[her] address as well as [her] son's address" is the only other evidence presented to the dissolution court relative to Charlie's contacts with the State of Missouri. (emphasis added). *See discussion, supra.* While Wife's trial counsel informed the court below that Wife's parents lived in Piedmont (a statement supported by an affidavit found in the record, relating to the issue of service of process on husband), the record is devoid of evidence relating to Charlie's "present or future care, protection, training and personal relationships ...." § 452.450.1(2)(b).

The purpose of the "best interest" section is "to limit jurisdiction rather than to proliferate it.... The interest of the child is served when the forum has *optimum* access to relevant evidence about the child and family." UCCJA § 3 (comment), 9 U.L.A. 309 (1999)(emphasis added). Viewing this precept in the light of Wife's burden of proving jurisdiction, *State ex rel. Rashid,* 824 S.W.2d at 505, we cannot say that Wife met her burden.

The motion court abused its discretion in failing to set aside the default judgment as to child custody and support. Husband's second point is sustained.

The judgment of the trial court is reversed as to child custody and support. The remainder of the trial court's judgment is affirmed.

GARRISON, C.J., and
MONTGOMERY, P.J., concurs.