**Tito Dion REED, Respondent,**

v.

**Tewiana Chantel REED, Appellant.**

**No. WD 59583.**

Missouri Court of Appeals, Western District.

Dec. 18, 2001.

Nathan M. Nickolaus, Esq., Jefferson City, for Respondent.

Scott C. Trout, Esq., Michael P. Cohan, Esq., St. Louis, for Appellant.

Before PATRICIA A. BRECKENRIDGE, P.J., THOMAS H. NEWTON and LISA WHITE HARDWICK, JJ.

THOMAS H. NEWTON, Judge.

Ms. Tewiana Reed appeals the trial court's dissolution of marriage judgment which granted Mr. Tito Reed sole physical and legal custody of their child, Briana Reed.

The trial court did not have subject matter jurisdiction on the issue of child custody. We reverse the trial court's judgment and remand with instructions for the trial court to vacate the judgment as it relates to the issues of child custody, visitation and child support, and to decline jurisdiction under the Uniform Child Custody Jurisdiction Act.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On February 7, 1996, Tewiana and Tito Reed were married in El Paso County, Texas. Subsequently (the exact date is unclear [1]), the couple moved to Colorado Springs, Colorado. They had a child, named Briana Donna Reed, on July 21, 1997, while residing in Colorado. On July 1, 1998, Ms. Reed and Briana moved to Long Island, New York, to live with Mr. Reed's parents, Charles and Sherry Reed. This living arrangement was agreed to by the couple based on the belief that Mr. Reed, who was employed by the United States Army, would be transferred overseas.

---

1. Some of the dates are stated in approximate terms. The dates contained in the appellate briefs, and the record of the trial court are vague and sometimes conflicting.

Around December of 1999, Ms. Reed and Briana moved back to El Paso, Texas. It was about this time that the couple separated. Mr. Reed was not advised by Ms. Reed that she intended to move with their child back to Texas. While living in New York, Ms. Reed studied part time at Long Island University. To obtain a college degree, Ms. Reed moved back to New York on January 19, 2000. However, Briana remained in Texas with her maternal grandmother, Constance Howard.

In February of 1999, the United States Army moved Mr. Reed to Missouri. Mr. Reed then filed his petition for dissolution of marriage in Boone County on June 1, 2000. The issue of child custody had not been litigated in a court of law outside the State of Missouri before the filing of this petition. On December 5, 2000, a trial was held on the marital issues before the Honorable Joseph D. Holt in the Boone County Circuit Court. During this trial, both parties testified that they wanted to have custody of Briana.

The trial court entered a judgment in favor of Mr. Reed, granting him sole legal and physical custody of Briana Reed. Ms. Reed was awarded visitation rights with Briana at various times. In addition, the trial court dissolved the couple's marriage, divided their assets, and ordered Ms. Reed to pay $70.00 a month in child support.

On appeal, Ms. Reed raises two points. In Point I, Ms. Reed asserts that the trial court erred in entering an order of child custody because the trial court lacked subject matter jurisdiction over this issue as a result of Mr. Reed's failure to plead the jurisdictional facts required by the Uniform Child Custody Jurisdiction Act (UCCJA).[2] In Point II it is alleged that the

trial court erred in entering an order of child custody because the trial court lacked subject matter jurisdiction over this issue as required by the UCCJA.

## II. LEGAL ANALYSIS

■ Ms. Reed asserts that the trial court erred in making a child custody ruling because Mr. Reed failed to plead the jurisdictional facts that are required under the UCCJA. In asserting that Mr. Reed failed to specifically allege the requisite jurisdictional facts in his petition, Ms. Reed points to *no* authority stating that such facts must be plead in the petition pursuant to the UCCJA. In addition, because no objection was made at the trial court level, the only basis for Ms. Reed to attack this alleged deficiency in the petition is that it resulted in the trial court entering a judgment without proper subject matter jurisdiction.

It is true that § 452.480[3] requires that the petitioner include pleading information in a petition where child custody is an issue. But this requirement is separate and distinct from the jurisdictional requirement of the UCCJA. *Bell v. Bell,* 987 S.W.2d 395, 398 (Mo.App. E.D.1999). Moreover, after reviewing Mr. Reed's petition for dissolution of marriage, no deficiency under § 452.480 is apparent, and Ms. Reed doesn't even discuss this part of the statute.

This point is denied.

■ In Point II, we entertain the central issue in this appeal. We must determine whether the trial court had subject matter jurisdiction over the issue of child custody. Subject matter jurisdiction is a significant issue, and may be raised for the first time on appeal. *In re Marriage of*

---

2. Sections 452.440 to 452.550 RSMo 2000 are considered the "Uniform Child Custody Jurisdiction Act."

3. All statutory references are to RSMo 2000 unless otherwise indicated.

*Dooley,* 15 S.W.3d 747, 754 (Mo.App. S.D. 2000). "Jurisdiction under the UCCJA to hear custody matters is characterized as subject matter jurisdiction, which may not be waived, and may not be conferred by consent of the parties." *Lavalle v. Lavalle,* 11 S.W.3d 640, 651 (Mo.App. E.D. 1999); *see also Steele v. Steele,* 978 S.W.2d 835, 837 (Mo.App. W.D.1998).

In § 452.450, the UCCJA clearly defined the jurisdictional requirements for a trial court to be "competent to decide child custody matters." The statute states that jurisdiction is proper if:

(1) This state:

(a) Is the home state of the child at the time of commencement of the proceeding; or

(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or

(2) It is in the best interest of the child that a court of this state assume jurisdiction because:

(a) The child and his parents, or the child and at least one litigant, have a significant connection with this state; and

(b) There is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

(3) The child is physically present in this state and:

(a) The child has been abandoned; or

(b) It is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse; or is otherwise being neglected; or

(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

§ 452.450.1

■ In applying this statute to our case, one must traverse through the factual history of the Reed family. After reviewing the first three of the four grounds in which jurisdiction may be found proper under § 452.450, it is clear that they are all improper grounds. Numbers 1–3 are all inadequate grounds for jurisdiction because of the same general reason: Briana never resided in the state of Missouri before the original petition for dissolution of marriage was filed by Mr. Reed.[4] However, to gain a better understanding of the UCCJA's jurisdictional requirements, we will analyze each prong as it relates to our case.

**1. Home State, § 452.450.1(1)**

Neither party on appeal disputes the fact that Missouri cannot be Briana's "home state" for purposes of the relevant jurisdictional analysis under the UCCJA.

---

**4.** Although Briana currently resides within Missouri's borders, it is a well established rule that the determination of whether jurisdiction exists is to be based on the facts existing at the time jurisdiction is invoked under § 452.450.1. *Dooley,* 15 S.W.3d at 755; *State ex rel. Laws v. Higgins,* 734 S.W.2d 274, 278 (Mo.App. S.D.1987); *see also State ex rel. Wilson v. Brown,* 897 S.W.2d 171, 174 (Mo. App. S.D.1995) (holding that the "general rule is that a court's jurisdiction over a case depends on the facts existing at the time jurisdiction is invoked.") (citing *Davis v. Davis,* 799 S.W.2d 127, 131 (Mo.App. W.D.1990)).

Under the UCCJA, "home state" is defined as:

the state in which, immediately preceding the filing of custody proceeding, the child lived with his parents, a parent, an institution; or a person acting as a parent, for at least six consecutive months; or, in the case of a child less than six months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.

§ 452.445(4).

■ In making the determination of whether one state qualifies as a child's home state, it is important to remember that in some circumstances *no* state may qualify as a child's home state. *See State ex rel. In Interest of R.P. v. Rosen,* 966 S.W.2d 292, 300 (Mo.App. W.D.1998). Moreover, a state does not qualify as a child's "home state" simply because the child was born in the state. *Id.* Rather, this determination turns upon the definition provided in the statute, § 452.445(4). *Bell,* 987 S.W.2d at 397.

■ Applying § 452.445(4) to our case, it is clear that the only state which plausibly qualifies for "home state" status is Texas. As Mr. Reed concedes in his brief on appeal, Briana lived in Texas during the six months prior to the filing of the petition, therefore excluding any other state from "home state" eligibility. *See State ex rel. Phelan v. Davis,* 965 S.W.2d 886, 890 (Mo.App. W.D.1998). However, it is unclear if Briana lived with "a parent, an institution; or a person acting as a parent" while in Texas, as required by § 452.445(4) for "home state" status. Ms. Reed left Texas and returned to New York in January of 2000, to attend college, leaving Briana with her maternal grandmother, Constance Howard. Accordingly, the question arises whether Mrs. Howard was "a person acting as a parent" under § 452.445(4). If it is to be concluded that she was, it would logically follow that Briana's "home state" is Texas under the UCCJA. *See* § 452.445(4).

We conclude that Constance Howard was "a person acting as a parent" under § 452.445(4). Under the plain meaning of this term, it cannot be disputed that Mrs. Howard was acting as a parent to Briana. While residing in Texas, it is clear that neither biological parent was the child's caretaker. Accordingly, Ms. Howard was acting as a parent under the statute.

■ Mr. Reed argues that this conclusion is flawed, because Texas cannot be the home state of Briana, since Ms. Reed removed the child from the state of New York and took her to Texas without his permission. Thus, Mr. Reed argues, Ms. Reed has acted with "unclean hands" under § 452.475 of the UCCJA in transplanting Briana to Texas, and as such Texas cannot be her "home state." Section 452.475.1 states that "[i]f the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct, the court may decline to exercise jurisdiction if this is just and proper under the circumstances." However, "the doctrine of unclean hands does not affect a court's jurisdiction but only the court's decision whether it should or should not exercise jurisdiction." *State ex rel. Rashid v. Drumm,* 824 S.W.2d 497, 501 (Mo.App. E.D.1992). Here the doctrine of unclean hands is not applicable to this analysis because our review is limited to a determination of whether Texas could have plausibly asserted jurisdiction, not whether they

would have ultimately done so.[5] Accordingly, even if Ms. Reed acted with "unclean hands",[6] Texas still had proper authority to assert "home state" jurisdiction under the UCCJA.

### 2. Best Interest of the Child, § 452.450.1(2)

■ Missouri cannot assert jurisdiction under this part of the statute. Under § 452.450.1(2), it must be found that the "child and his parents, or the child and at least one litigant, have a significant connection with this state" in order for jurisdiction to properly lie. Having never been in Missouri when the trial court asserted jurisdiction in this matter, it cannot be argued that Briana has a "significant connection" with the state of Missouri. Also, it can not be said that there "is available in this state substantial evidence concerning the child's present or future care." § 452.450.1(2).

However, the same analysis does not hold for the state of Texas. Briana did have a significant connection with that state, residing there when the jurisdictional determination in question was made by the trial court. This connection to Texas is not in a vacuum. Both of her parents have connections there, having been married in Texas after residing together in that state for some time. Moreover, Briana's maternal grandparents reside in Texas, and therefore at the time the jurisdic-tional determination was made by the trial court, there was substantial evidence as to the child's future welfare in that state.

Texas is not the only state which had a colorable claim for jurisdiction under § 452.450.1(2). A similar argument can be made in regard to New York. Briana lived there for approximately a year, and her paternal grandparents, as well as her mother, still resided in that state when the jurisdictional issue in question was determined by the trial court. Even Colorado has a strong argument for jurisdiction under this prong because Colorado is the only state where every member of the Reed nuclear family lived and resided together collectively. It is also the state where Briana was born. After going through this analysis, it is clear that some states may have had the authority to assert jurisdiction over this matter under § 452.450.1(2). However, there is no basis to conclude that Missouri is among them.

### 3. Emergency Jurisdiction, § 452.450.1(3)

■ This prong of UCCJA is inapplicable to the Reed family. In order for jurisdiction to be proper under § 452.450.1(3), the child must have been abandoned, or currently in danger of abuse or mistreatment. No allegation of abuse or mistreatment of Briana has been made at anytime in this matter. Accordingly, emergency

---

**5.** The question of whether Texas would have chosen to exercise jurisdictional authority is an entirely different matter. For the purposes of this opinion, it is enough to conclude that Texas could have done so under the UCCJA. Had Ms. Reed filed a petition in Texas (or any other state) seeking child custody, the doctrine of unclean hands may have become relevant and applicable to the question of whether that court could exercise jurisdiction to determine the child custody matter.

**6.** It cannot be concluded definitively whether Ms. Reed acted in bad faith in moving her child back to Texas. At that time, she was the primary caregiver for Briana. As such, when she decided to go back to Texas it logically follows that she would have chosen to bring the child back with her because Mr. Reed lived in Colorado. The record on appeal is not developed to the degree to make the determination of whether this constituted "reprehensible conduct" under § 452.475.1, and as previously mentioned in note 4, this discussion is not critical to the "home state" analysis employed in this opinion.

jurisdiction is not appropriate within any state.

#### 4. Default Jurisdiction, § 452.450.1(4)

Because the trial court's jurisdiction has been found by this court to be improper in the first three prongs of § 452.450, the outcome of this appeal turns on whether jurisdiction was proper under prong number four of the statute, the "default base" for jurisdiction. There are two ways for jurisdiction to be properly grounded under prong four, it must be found that either 1) it "appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivisions (1), (2), or (3)"; or 2) "another state has declined to exercise jurisdiction." § 452.450.1(4). Taking the latter of these points first, as far as the record on appeal shows, no other state has been asked to exercise jurisdiction in this case, and therefore no state has been able to decline jurisdiction under the UCCJA. Accordingly, that leaves the first part of prong four as the only plausible ground for jurisdiction in the state of Missouri. Prong four plays a necessary role under the UCCJA because if no other state has jurisdiction over the child, it is important that a default provision be available so that, in the best interest of the child, some state has the ability to adjudicate custody matters over the child. *Rashid,* 824 S.W.2d at 502–05.

■ It cannot be asserted that no other state has authority to assert jurisdiction under either prongs 1, 2, or both of these provisions. Thus, the default ground for jurisdiction (prong 4) is not available in this situation because § 452.450.1(4) requires that "no other state would have jurisdiction under [§ 452.450.1(1–3)]" for

that default provision to apply. The whole purpose of a default jurisdiction provision is for it to control only when the primary grounds for jurisdiction are not available in any other state. That is not the case here. Other states, most notably Texas, *could* have asserted jurisdiction under the UCCJA. Without saying more, it must follow that default jurisdiction is an improper ground for Missouri to have UCCJA subject matter jurisdiction in this case. Therefore, the trial court erred in ruling on the child custody and other related issues in the *Reed* marital dissolution proceedings.

### III. Conclusion

The trial court in Missouri lacked subject matter jurisdiction under the UCCJA. The trial court's order regarding child custody, visitation and child support is null and void. Accordingly, the trial court's judgment related to the issues of child custody, visitation and child support is vacated, and this case is remanded to the trial court with instructions to dismiss this matter as it pertains to those issues only [7] and decline jurisdiction under the UCCJA.

BRECKENRIDGE, P.J., and HARDWICK, J., concur.

---

7. The trial court's judgment, as it relates to the terms of dissolving the marriage between Mr. and Mrs. Reed, shall not be disturbed by this opinion. Our holding, that there is not subject matter jurisdiction in this case under the UCCJA, is relevant only to the issues of child custody, visitation and child support.