Rhonda L. MICHEL, Petitioner–Respondent,

v.

Chester R. MICHEL, Respondent–Appellant.

No. 24729.

Missouri Court of Appeals, Southern District, En Banc.

Jan. 27, 2003.

---

Christena Silvey Coleman, Garrett & Silvey, West Plains, for appellant.

Steven Privette, Kelly Michael Bosserman, Willow Springs, for respondent.

KENNETH W. SHRUM, Judge.

Chester R. Michel ("Husband") appeals from a judgment dissolving his marriage to Rhonda Michel ("Wife"). Husband challenges the portions of the judgment awarding Wife maintenance and attorney fees and the division of marital property. Also, Husband complains the trial court failed to classify and award certain alleged non-marital property to him. Finally, he urges reversal of the trial court's adjudication finding him in contempt of the court's temporary order to maintain health insurance for Wife. We dismiss the appeal because the trial court has not exhausted its jurisdiction, and a final, appealable judgment does not exist. This follows because (1) the judgment does not divide all marital debts as mandated by § 452.330.1, and (2) there is no showing the contempt order

had been enforced or that Husband had purged himself of the contempt.[1]

## FACTS

Husband and Wife married on June 20, 1987; they separated on January 16, 2000, and their marriage was dissolved on November 29, 2000. All other issues (maintenance, division of property, attorney fees request, and a contempt citation against Husband) were left unresolved in November 2000, but were tried April 4, 2001.[2] The judgment addressing the other issues was entered September 28, 2001.

Husband, age 56 at the time of trial, worked as an air traffic controller, but retired from that job before he and Wife married. After retiring from his air traffic controller job, Husband had various occupations, but at the time of trial, he was self-employed as a "provisionally licensed professional counselor." In this job, he provided counseling services for which he was paid largely by the state through its Medicaid program.

Similarly, Wife held several employments during the marriage, but ultimately quit working outside the home because of her health. She testified that she had conditions (lupus and fibromyalgia) that kept her from holding a job. At the time of trial, Wife had applied for and was awaiting a decision on a claim for social security disability benefits.

In the September judgment, the trial court awarded Wife non-modifiable maintenance, attorney fees, and health insurance to be provided by Husband. Moreover, the court adjudged Husband to be in contempt of a temporary order to maintain insurance on Wife; consequently, Wife was awarded $2,700 as reimbursement for medical costs incurred by her. Husband was given ninety days to purge himself of contempt by making such payment.

The judgment divided the parties' marital, personal property per detailed schedules attached to the judgment. As to real estate, the court awarded Husband the parties' one-half interest in a commercial lot and building in Willow Springs ("downtown property"). The marital residence, along with 18 acres, was awarded to Wife, "as well as the obligation to satisfy the debt on same."

Although the trial court assigned Wife the "obligation to satisfy the debt on the [marital home]," it did not identify that obligation, i.e., whether Wife's obligation was limited to the deed of trust lien (approximately $70,000), or whether it included an unsecured $18,000 down payment loan made by Husband's parents (Walter H. and Lois F. Michel).[3] Moreover, the trial court did not classify or distribute other debts mentioned in evidence; specifically, the judgment did not assign responsibility for debts to the IRS ($1,600), MOHELA ($46,000), Direct Merchants credit card ($7,000), First North American credit card ($4,700), First Bankcard (# 1) ($3,500), First Bankcard (# 2) ($1,815), Firstar Bank ($7,000), and Lois Michel Soulsey (approximately $26,200).[4]

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. No children were born of this marriage.

3. The parties appear to be in agreement that they owe $18,000 to Lois Michel Sousley (Husband's mother) as this sum represents a down payment made by Husband's parents on the marital home when it was purchased.

The name change for Lois resulted from her remarriage after Husband's father died.

4. Husband also claims he and Wife owe his mother $26,200 for the "downtown property." On that issue, Wife testified Husband's parents originally bought that parcel for $26,200; that after Husband and Wife made a few payments thereon, it was conveyed to them as "part of [Husband's] inheritance."

## DISCUSSION

Although neither party raised the issue of finality before the trial court or before this court on appeal, Husband alleges the trial court failed to divide all the parties' marital debts. Until § 452.330.1 was amended in 1998, trial courts were not statutorily obligated to allocate marital debts because debts incurred during marriage were not marital property. *Cross v. Cross,* 30 S.W.3d 233, 236 (Mo.App.2000). However, the 1998 amendment to the statute *requires* a trial court to divide "the marital property and *marital debts.*" § 452.330.1 (emphasis supplied); *see also Wright v. Wright,* 1 S.W.3d 52, 60 (Mo. App.1999).

▪ " 'A prerequisite to appellate review is that there be a final judgment.' " *Boley v. Knowles,* 905 S.W.2d 86, 88 (Mo. banc 1995) (citing § 512.020). When a trial court's judgment is not final, an appellate court lacks jurisdiction, and the appeal must be dismissed. *Comm. for Educ. Equality v. State,* 878 S.W.2d 446, 454 (Mo.banc 1994). An appealable judgment resolves all issues in a case and leaves nothing for future determination. *Boley,* 905 S.W.2d at 88[3].

▪ These fundamental rules of appellate practice apply in dissolution cases. Countless decisions hold that a trial court, not fully dividing the property of the dissolution participants, does not exhaust its jurisdiction; consequently, such decrees are not final judgments from which an appeal can be taken. *See Meltzer v. Meltzer,* 775 S.W.2d 120, 121 (Mo.banc 1989); *Crawford v. Crawford,* 31 S.W.3d 451, 453 (Mo.App.2000); *In re Marriage of Clark,* 3 S.W.3d 402, 404[4] (Mo.App.1999); *Spence*

*v. Spence,* 922 S.W.2d 442, 443 (Mo.App. 1996). This follows because, as in most judgments, a dissolution decree can only be final and appealable if it disposes of "all issues ... in the case." *Thomas v. Thomas,* 910 S.W.2d 825, 827[2] (Mo.App.1995). Moreover, the finality of a judgment is a jurisdictional prerequisite; appellate courts have the duty to determine, *sua sponte,* their jurisdiction; and, if a judgment is not final, then it must be dismissed. *Spence,* 922 S.W.2d at 442.

▪ The 1998 amendment to § 452.330.1 is a clear, unmistakable expression of the legislative intent to make the division of marital debts an issue in a dissolution case much like it had previously made the division of marital property an issue in such litigation. When the language of a statute is clear, we presume the legislature " 'intended what it plainly and unambiguously said.' " *Roberson v. State,* 989 S.W.2d 192, 194[3] (Mo.App.1999) (quoting *Crevisour v. Hendrix,* 234 Mo. App. 1012, 136 S.W.2d 404, 412 (Mo.App. 1939)). Moreover, when the legislature amends a statute, we presume it knows the state of the law, *State v. Condict,* 65 S.W.3d 6, 13[8] (Mo.App.2001), and that it intended for the amendment to have some effect or accomplish some legislative purpose. *Massage Therapy Training Institute, LLC v. Mo. State Bd. of Therapeutic Massage,* 65 S.W.3d 601, 607[8] (Mo.App. 2002). We will not charge the legislature with having done a meaningless act. *State ex rel. Dir. of Rev. v. Gaertner,* 32 S.W.3d 564, 567[6] (Mo.banc 2000).

Applying these rules and giving the language of § 452.330.1 its plain and ordinary

---

Later, however, Husband and Wife conveyed a one-half interest in the downtown property to Husband's sister (apparently at Lois Michel Sousley's request). After this, the three owners (Husband, Wife, and Husband's sister)

tried to sell the property (albeit unsuccessfully) because Soulsey "wanted her money out of it." Therefore, there is an apparent dispute whether the $26,200 was a debt or gift.

meaning, we are persuaded the legislature intended to make the division of marital property and marital debt equal issues without distinguishing between the two. To hold otherwise, would require us to rewrite the plain language of the 1998 amendment. However, our function is not to legislate. *Alpha One Properties, Inc. v. State Tax Comm. of Mo.*, 887 S.W.2d 390, 392 (Mo.banc 1994). Having concluded that the division of marital debt is a property issue under the 1998 amendment to § 452.330.1, it necessarily follows that a dissolution decree can only be final and appealable if it disposes of marital debts.

■ Here, the trial court made an incomplete finding by not "divid[ing] ... [all] marital debts" as mandated by § 452.330.1. As such, the trial court has not exhausted its jurisdiction, it has not disposed of all issues, and its judgment is not a final judgment from which an appeal can be taken. *See Meltzer*, 775 S.W.2d at 121; *Crawford*, 31 S.W.3d at 453. While it is unfortunate this case cannot be finally concluded, we have no alternative but to dismiss the appeal for lack of jurisdiction. *Spence*, 922 S.W.2d at 443.

■ The contempt issue also lacks finality. This follows due to the general rule that an order of civil contempt is not final for purposes of appeal until it is enforced. *Strickland v. Strickland*, 941 S.W.2d 866, 867[1] (Mo.App.1997).

The record reveals no attempt to enforce the contempt judgment against Husband. Husband was given until December 27, 2002 (ninety days from judgment), to purge himself of contempt by paying Wife $2,700.[5] Docket sheets filed with this court contain docket entries through February 6, 2002. There is no entry showing that: A warrant of commitment was issued; the enforcement of the contempt order was sought; or Husband purged himself of contempt by paying the $2,700. Although docket entries on January 29, 2002, recite that the trial judge set bond at "500 cash or $5,000 surety[ ]" and "$500 cash was deposited" that date, the record also shows this was a supersedeas bond, not a bail bond.[6]

On this record, the rule announced in *Strickland* governs. Because the record on appeal does not show Husband purged himself of contempt, nor show his arrest, confinement, and bond, we necessarily conclude the contempt judgment is interlocutory and unappealable. *Id.* at 868[2]. Accordingly, Husband's appeal from the contempt judgment must be dismissed.

The effect of the dismissals is to recognize the jurisdiction of the trial court to enter a new judgment covering the entire case. *Crawford*, 31 S.W.3d at 453[6]. Because either party will then have the right to appeal the trial court's new judgment, the trial court may wish to consider additional evidence. *Id.* It may choose to do so because of the "inseparable connection between the allocation of marital debt and the fair and equitable division of marital

---

5. The $2,700 sum represented Wife's uninsured medical costs that would have been covered had Husband provided insurance for Wife as ordered.

6. Recently, in *Crow v. Gilmore*, —— S.W.3d ——, 2002 WL 31546076 (Mo.App.S.D. No. Nov. 18, 2002), this court held *en banc* (with two judges dissenting) that a supersedeas bond for the full amount of a contempt judg- ment rendered the judgment final and appealable even though the contemnor had neither purged himself of the contempt, nor been incarcerated. Because *Crow v. Gilmore* has been transferred to the Supreme Court of Missouri, it remains to be seen whether the exception thus fashioned will become the law in this state. In any event, dismissal here is not contrary to *Crow v. Gilmore* as a $500

property." *Crawford,* 31 S.W.3d at 453, n. 1. Another reason to consider such additional evidence flows from the connection between the marital property division and determining Wife's needs in order to calculate any maintenance award. §§ 452.335.1(1), 452.335.2(1),(5),(8). *See In re Marriage of Johnson,* 856 S.W.2d 921, 927 (Mo.App.1993).[7]

Appeal dismissed.

PREWITT, P.J., PARRISH, J., MONTGOMERY, P.J., GARRISON, J., BARNEY, J., and RAHMEYER, C.J., concur.

bond does not cover the amount of the unsatisfied contempt judgment.

7. Similarly, the court may wish to consider whether the request for findings of fact and conclusions of law, with regard to the maintenance issue, was done in a timely fashion; and, if so, whether compliance with that request was somehow waived by the requesting party.