In Re the MARRIAGE OF Jack L. RHOADS and Michele A. Rhoads.

Jack L. Rhoads, Petitioner–Respondent,

v.

Michele A. Rhoads, Respondent–Appellant.

No. 27205.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 8, 2006.

J. Matthew Miller, Springfield, MO, for Appellant's Attorney.

Jack L. Rhoads, Springfield, MO, acting pro se.

JEFFREY W. BATES, Chief Judge.

Michelle A. Rhoads (Mother) appeals from a judgment dissolving her marriage to Jack L. Rhoads (Father), presenting seven points for our decision. Four of Mother's points involve issues relating to the custody and support of the parties' minor child, Clayton Rhoads (Clayton). Because Clayton had lived with Mother in Massachusetts for approximately ten years

prior to trial, we conclude that the court below lacked subject matter jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA) to adjudicate these issues.[1] Accordingly, we must reverse and remand the case with instructions to vacate these provisions of the judgment. The remainder of this appeal must be dismissed for lack of appellate jurisdiction. By failing to apportion a federal tax debt between Father and Mother, the trial court failed to completely divide the parties' debts as required by § 452.330.1. Consequently, there is no final judgment from which an appeal may be taken.

Father and Mother were married on September 4, 1976, in Los Angeles, California. In 1985, the parties moved to Springfield, Missouri. At that point, they had two children: Joshua, who was born in February 1980; and Tyler, who was born in February 1983.

Joshua became involved in the sport of artistic roller skating and participated in competitions all across the country. While at a skating event, Father and Mother spoke with a well-known skating coach about the possibility of training Joshua. The coach lived in New Hampshire. In 1993, the Rhoads family moved to New Hampshire to live near the coach. Their third son, Clayton, was born that year as well.

Father, a real estate broker, obtained his New Hampshire real estate license and a position with a real estate firm there. Due to lack of business, Father agreed to return to Springfield, Missouri. The plan was that he would generate some income selling real estate there, sell the family home and return to his family in New Hampshire. After a few initial trips back to New Hampshire, Father remained in Springfield, maintained telephone contact and sent money to Mother from 1994 until 2002 when he filed for divorce. During this period of time, Father failed to pay federal taxes on his income. As a result, the parties accrued a debt to the Internal Revenue Service (IRS) of approximately $334,000.

In the meantime, the skating coach moved to Massachusetts. Sometime in 1995, Mother and the children decided to follow. They moved from New Hampshire to Raynham, Massachusetts. As of the date of trial, Joshua and Tyler were emancipated. Mother and Clayton continued to reside in Raynham. He attended school there and got involved in artistic roller skating like his older brothers. Clayton last saw Father in 1998 and had last talked to him by telephone a year before Father filed his dissolution petition on October 9, 2002.

In Father's petition, he alleged that "within the five years next preceding the filing of this Petition, [Clayton] has resided with [Mother], in Raynham, Bristol County, Massachusetts" and that "the State of Massachusetts has jurisdiction to decide issue[s] of child custody and support." In February 2003, Mother answered the petition and filed her own counter-petition for dissolution. In Mother's answer, she admitted the former allegation and denied the latter. Mother sought sole physical and legal custody of the child, as well as temporary and periodic maintenance. Neither Mother's answer nor her counter-petition for dissolution contained any allegations sufficient to vest a Missouri court with subject matter jurisdiction to adjudicate the issues of child custody, visitation or support pursuant to the UCCJA. Mother merely alleged that Clayton was

---

1. All references to statutes are to RSMo (2000) unless otherwise specified. Missouri's version of the UCCJA is codified at §§ 452.440–.550.

living in her custody and not involved in any other custody proceeding.

The trial was conducted in March 2005. In an attempt to establish jurisdiction under the UCCJA, Father testified that Clayton's "legal residence" was "in the State of Missouri prior to 2002." Father also testified about the $334,000 federal tax debt owed to the IRS. The parties had filed joint tax returns, and all of the money giving rise to the federal tax debt was marital income. As of the date of trial, Father was planning to meet with an IRS agent in a few days to discuss the details of a repayment plan. Father requested that the trial court divide the federal tax debt between Father and Mother.

On July 7, 2005, the court issued its findings, recommendations for judgment and decree of dissolution of marriage. The court specifically found the child's "legal residency was in the State of Missouri for the six-month period prior to the filing of this action, and, therefore, this court has jurisdiction regarding the issues concerning [Clayton]." The court awarded both parties joint physical and legal custody of the child, adopted Father's parenting plan, ordered Father to pay $901 per month child support, allowed Father the tax dependency exemption and declined to apportion responsibility for Clayton's college expenses between the parties. The court found Mother was entitled to maintenance, but denied that relief to her because Father was unable to pay it. With respect to the federal tax liability, the court only made the following findings:

> [T]he parties have a Federal tax liability that is a joint obligation, and the Court also finds that neither party's conduct caused an unfair burden to be imposed on the marital estate. The Court also finds that the decision to follow the skating coach was a mutual decision even though the decision may not have been simultaneous, and, at times both wavered in their testimony as to whether or not their decision was a wise one. The Court further finds that each party's actions confirm that they both tacitly approved of their living arrangements and the sacrifices that they made were direct consequences of their decision, and that the tax liability is a direct consequence of parties' decision made in 1993 and 1994 and each following year.

The court listed the "Joint Federal tax liability" with an "[u]nknown" value on both parties' debt schedules.

On July 22, 2005, Mother filed a motion for rehearing, in which she challenged, *inter alia,* the court's ruling on the federal tax liability and its failure to award her maintenance. After a hearing, the court denied Mother's motion. This appeal followed.

### Child Custody and Support Issues

In Points II, III, IV and VI, Mother contends the trial court erred in: (1) awarding Father joint legal custody of Clayton because there had been no contact between father and child for several years while Clayton and Mother had been living in Massachusetts; (2) ordering child support without considering Clayton's extraordinary expenses for artistic roller skating; (3) awarding Father the tax dependency exemption for Clayton; and (4) failing to order the parties to pay Clayton's college expenses. For the reasons explained below, the trial court lacked subject matter jurisdiction under the UCCJA to adjudicate any of these issues. Though neither party raised the issue, we may examine *sua sponte* whether the trial court possessed subject matter jurisdiction under the UCCJA. *Elbert v. Elbert,* 833 S.W.2d 884, 887 (Mo.App.1992). Our review of jurisdictional issues is *de novo. Bounds v.*

*O'Brien,* 134 S.W.3d 666, 670 (Mo.App. 2004).

▮ A trial court's jurisdiction under the UCCJA to hear custody matters is described as "subject matter jurisdiction," which must be based upon circumstances existing at the time the court's jurisdiction is invoked. *Pirisky v. Meyer,* 176 S.W.3d 145, 146 (Mo. banc 2005). Even though the parties may agree to determine custody in this state, subject matter jurisdiction cannot be conferred by the consent of the parties or predicated upon the doctrine of waiver. *Id.; Lavalle v. Lavalle,* 11 S.W.3d 640, 651 (Mo.App.1999). The UCCJA is purposely designed "to ensure that a child's custody determination is made in the state with which the child and his family are most closely connected and where the most significant evidence concerning the child's custody is available ...." *State ex rel. In Interest of R.P. v. Rosen,* 966 S.W.2d 292, 299 (Mo.App.1998). Father bore the burden of establishing a *prima facie* basis for jurisdiction pursuant to the UCCJA because he was the proponent of that jurisdiction below. *In re Marriage of Dooley,* 15 S.W.3d 747, 755 (Mo.App.2000).

Section 452.450.1 sets out the four alternative jurisdictional bases that exist under the UCCJA. Only two are potentially applicable here.[2] If a court is otherwise competent to decide a child custody matter, this statute grants the court subject matter jurisdiction to do so if:

(1) This state:

(a) Is the home state of the child at the time of commencement of the proceeding; or

(b) Had been the child's home state within six months before commencement of the proceeding and the child is absent from this state for any reason, and a parent or person acting as parent continues to live in this state; or

. . .

(4) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction.

▮ "It is implicit in the UCCJA that the trial court is to make an initial determination of jurisdiction by express findings of fact before proceeding to the substantive issue of custody." *State ex rel. Dept. of Social Services, Div. of Child Support Enforcement v. Hudson,* 158 S.W.3d 319, 323 (Mo.App.2005). The court below found that Clayton's "legal residency was in the State of Missouri for the six-month period prior to the filing of this action, and, therefore this court has jurisdiction regarding the issues concerning [the child]." Hence, the trial court determined that "legal residency" in this state is a proper basis for home state jurisdiction under § 452.450.1(1) of the UCCJA. In so determining, the court misapplied the law.

Regardless of whether Clayton's legal residency is in Missouri—an issue we do not decide—legal residency is insufficient to establish home state jurisdiction under the UCCJA. "Home state" is defined as

---

**2.** The "best interest" ground set out in § 452.450.1(2) is inapplicable because substantial evidence of Clayton's "present or future care, protection, training, and personal relationships" is not available in this state.

§ 452.450.1(2)(b). The third ground for jurisdiction set out in § 452.450.1(3) is inapplicable because Clayton was not "physically present" in this state.

"the state in which, immediately preceding the filing of custody proceeding, the child lived with ... a parent ... for at least six consecutive months ...." § 452.445(4). "The phrase 'lived with' is a commonplace term having no technical meaning, and it means literally what it says. It refers to the child's physical presence in a state without regard for the child's legal residence or domicile." *In re Marriage of Miller and Sumpter,* 196 S.W.3d 683, 691 (Mo.App.2006). Missouri cases conducting a "home state" analysis under the UCCJA examine where the child has actually, physically lived. *See, e.g., id.; Krasinski v. Rose,* 175 S.W.3d 202, 205 (Mo.App. 2005); *Reisinger v. Reisinger,* 125 S.W.3d 879, 882 (Mo.App.2004); *Reed v. Reed,* 62 S.W.3d 708, 713 (Mo.App.2001); *In re Marriage of Dooley,* 15 S.W.3d 747, 757 (Mo.App.2000); *Bell v. Bell,* 987 S.W.2d 395, 398–99 (Mo.App.1999); *State ex rel. Wilson v. Brown,* 897 S.W.2d 171, 176 (Mo.App.1995); *Elbert v. Elbert,* 833 S.W.2d 884, 887 (Mo.App.1992); *Lydic v. Manker,* 789 S.W.2d 129, 131 (Mo.App. 1990); *Dobyns v. Dobyns,* 650 S.W.2d 701, 706 (Mo.App.1983); *Timmings v. Timmings,* 628 S.W.2d 724, 726 (Mo.App.1982). In the case at bar, the evidence is undisputed that Clayton had physically lived with Mother in Raynham, Massachusetts, since 1995. Mother testified that Clayton lived and attended school in Raynham. Thus, Massachusetts would be considered Clayton's home state under § 452.450.1(1). *See Krasinski,* 175 S.W.3d at 205.

Neither is there any basis for grounding jurisdiction under the UCCJA on § 452.450.1(4). Massachusetts' version of the UCCJA is codified at Mass. Gen. Laws Ann. ch. 209B, §§ 1–14 (West 2006). That state has adopted jurisdictional require-ments substantially similar to Missouri. *See* Mass. Gen. Laws Ann. ch. 209B, § 2 (West 2006). There is nothing in the record to suggest Massachusetts has declined jurisdiction under § 452.450.1(4). Therefore, the trial court did not have subject matter jurisdiction under the UCCJA to adjudicate the issue of Clayton's custody.

When subject matter jurisdiction under the UCCJA is absent, a trial court also lacks jurisdiction to adjudicate custody-related issues such as child support. *See Miller,* 196 S.W.3d at 694; *Krasinski,* 175 S.W.3d at 206; *Reed,* 62 S.W.3d at 715; *Dooley,* 15 S.W.3d at 758; *see also McKinnon v. McKinnon,* 896 S.W.2d 90, 91 (Mo. App.1995); *Adams v. Adams,* 871 S.W.2d 105, 108 (Mo.App.1994). Mother's points of error concerning Clayton's extraordinary expenses, the federal tax dependency exemption and liability for his college expenses all directly relate to the child support determination under § 452.340 and its calculation under the Form 14 of the Rules of Civil Procedure.[3] *See* Form 14, Directions Line 6e (" '[o]ther extraordinary child-rearing costs' may include ... activities intended to enhance the athletic, social or cultural development of a child"); Form 14, Assumptions (7) ("[t]he schedule of basic child support obligations assumes that the parent entitled to receive support claims the tax exemption for the children entitled to support"); *In re Marriage of Hoskins,* 164 S.W.3d 188, 196 n. 9 (Mo. App.2005) ("under the assumptions made on the Form 14, the custodial parent receives the dependency exemption every year"); § 452.340.5 (governing continuing parental support obligations when a child reaches age eighteen, the child is enrolled in and attending a secondary school program of instruction); *see also* Rule 88.01.

---

3. References to § 452.340 are to RSMo Cum. Supp. (2005). References to rules are to the Missouri Court Rules (2006).

Thus, these support-related issues can only be decided by a court with subject matter jurisdiction to determine Clayton's custody.

■ In sum, Father failed to present sufficient evidence to establish a *prima facie* basis for subject matter jurisdiction under the UCCJA. Therefore, the trial court lacked jurisdiction pursuant to § 452.450.1 to decide the issues of Clayton's custody and support. *See Krasinski,* 175 S.W.3d at 206; *Reed,* 62 S.W.3d at 715. "A judgment issued in excess of the trial court's jurisdiction is void." *In re Moreau,* 161 S.W.3d 402, 405 (Mo.App.2005). Thus, all of the portions of the July 7, 2005 judgment relating to Clayton's custody and support are void and must be vacated on remand. *See Mahoney v. Mahoney,* 162 S.W.3d 512, 514 (Mo.App.2005); *Love v. Love,* 75 S.W.3d 747, 754–55 (Mo.App. 2002).

### Debt Division and Maintenance

■ In Points I, V and VII, Mother contends the trial court erred in: (1) denying her request for maintenance; (2) failing to divide the parties' joint federal tax debt of $334,000; and (3) ordering that Mother be obligated to pay any portion of that debt. Once again, we are confronted at the outset with an issue of jurisdiction because we must consider whether the judgment of the trial court, as to these issues, is final and appealable. *Jonusas v. Jonusas,* 168 S.W.3d 117, 119 (Mo.App. 2005). The finality of a judgment is a jurisdictional prerequisite and it is our duty *sua sponte* to determine our jurisdiction. *Id.; see In re Marriage of Singleton,* 188 S.W.3d 468, 471 (Mo.App.2006). "When a trial court's judgment is not final, an appellate court lacks jurisdiction, and the appeal must be dismissed." *Michel v. Michel,* 94 S.W.3d 485, 488 (Mo.App. S.D. banc 2003); *Jonusas,* 168 S.W.3d at 119.

Section 452.330.1 requires a trial court to divide the parties' marital debts as well as their marital property. *Michel,* 94 S.W.3d at 488. In Mother's fifth point, she correctly points out that the trial court failed to divide the parties' joint marital debt for federal income taxes. "It is characteristic of a joint obligation that each obligor is bound for the performance of the entire obligation." *Kay v. Freeman,* 785 S.W.2d 90, 93 (Mo.App.1990); *Schubert v. Trailmobile Trailer, L.L.C.,* 111 S.W.3d 897, 902 (Mo.App.2003). Therefore, Father and Mother are each obligated to pay the entire amount of the IRS debt. *Schubert,* 111 S.W.3d at 902. Until the trial court specifies the relative proportion of the debt that should be borne by Father and Mother vis-à-vis each other, however, the judgment provides neither party with any right of reimbursement in the event one of them pays the entire, or a disproportionate share, of this joint obligation. *Cf., e.g., Bolton v. Bolton,* 950 S.W.2d 268, 272 (Mo.App.1997) (remand to include a determination of reimbursement to Father for payments on Mother's obligation). Moreover, the proportionate amount to be paid by each must be "definite and capable of enforcement." *Hird v. Hird,* 872 S.W.2d 605, 606 (Mo.App.1994); *Jonusas,* 168 S.W.3d at 120. Therefore, further action is required for the trial court to determine each party's relative responsibility for the joint tax debt and to specify said sum on the parties' respective debt schedules.

By not dividing all of the marital debts as mandated by § 452.330.1, "the trial court has not exhausted its jurisdiction, it has not disposed of all issues, and its judgment is not a final judgment from which an appeal can be taken." *Michel,* 94 S.W.3d at 489; *Garrett–Oliver v. Oliver,* 113 S.W.3d 698, 698 (Mo.App.2003). We have no alternative but to dismiss the remain-

der of Mother's appeal for lack of jurisdiction due to the absence of a final judgment.

On remand, the trial court may wish to consider additional evidence on the federal tax debt issue because it could affect the overall property division and the court's decision to deny Mother any maintenance. *Michel*, 94 S.W.3d at 489–90. In *Michel*, this Court explained:

> The effect of the dismissals is to recognize the jurisdiction of the trial court to enter a new judgment covering the entire case. Because either party will then have the right to appeal the trial court's new judgment, the trial court may wish to consider additional evidence. It may choose to do so because of the "inseparable connection between the allocation of marital debt and the fair and equitable division of marital property." Another reason to consider such additional evidence flows from the connection between the marital property division and determining Wife's needs in order to calculate any maintenance award.

*Id.* (citations omitted).

### Conclusion

We hold that the trial court lacked subject matter jurisdiction under the UCCJA to adjudicate any issues relating to Clayton's custody and support. Therefore, the portions of the judgment addressing these issues are null and void. The case is remanded to the trial court with instructions to vacate all portions of the judgment relating to child custody and support and to decline jurisdiction to adjudicate these issues under the UCCJA. *See In re Marriage of Miller and Sumpter*, 196 S.W.3d 683, 693 (Mo.App.2006); *Reed v. Reed*, 62 S.W.3d 708, 715 (Mo.App.2001). Because there is no final judgment in this case, we are unable to address the merits of Mother's remaining points on appeal. The cause is remanded to the trial court for further proceedings consistent with this opinion. *See Jonusas*, 168 S.W.3d at 121.

GARRISON and BARNEY, JJ., concur.