**In re the MARRIAGE OF Dewey NARDINI, Jr. and Marian B. Nardini**

**Dewey Nardini, Jr., Petitioner–Appellant,**

v.

**Marian B. Nardini, Respondent–Respondent.**

**No. SD 29692.**

Missouri Court of Appeals, Southern District, Division Two.

March 10, 2010.

---

Greggory D. Groves, Lowther Johnson, Springfield, MO, for Appellant.

John O. Russo, Bailey & Russo, LLC, Mountain Home, Arkansas, for Respondent.

GARY W. LYNCH, Presiding Judge.

Appellant Dewey Nardini, Jr. ("Husband") petitioned for dissolution of his marriage to Respondent Marian B. Nardini ("Wife") in the Circuit Court of Taney County. Following entry of a Judgment of Dissolution of Marriage, filed November 20, 2008, Husband appeals, alleging error in the trial court's classification and division of a purported disability pension as marital property and error in the trial court's award of maintenance to Wife. Finding that the trial court's judgment failed to divide and dispose of all of the parties' property and debts and that, in the absence of such a division, the trial court's judgment is not a final judgment, we lack statutory authority to hear this appeal and, therefore, dismiss it.

### Factual and Procedural Background

Husband and Wife were married August 26, 1966, in San Diego, California. Three children were born to the marriage, all of whom were emancipated prior to the initiation of the underlying action. The parties separated in September or October of 2005. Husband filed a petition for dissolution on July 3, 2006, and Wife, in due course, counter-petitioned for dissolution of marriage. In her counter-petition, Wife alleged "[t]hat there is non-marital property, marital property, and marital debts to

be divided by the Court[.]" Wife further requested an award of maintenance.

The parties appeared for a hearing on August 31, 2007. Husband appeared *pro se,* and Wife appeared in person and was represented by counsel. The trial court initially noted, "All of the requirements of the local rules have not been provided," but the trial court, nevertheless, proceeded to hear the case. Husband and Wife were sworn in, after which the trial court proceeded to question the parties regarding certain assets. Wife stated that she drove a 1996 Oldsmobile, which was titled in her name, and Husband testified to driving a 2007 Chevy Impala and a 1988 Corvette, both of which were financed. Husband further stated that he also possessed a mobile home. During this line of questioning, counsel for Wife interjected that "pretty much the parties have already divided all the marital property with the exception of one asset[,]" which counsel identified as "a federal annuity, a pension." Counsel described the vehicles and mobile home as "after-acquired property," and requested an opportunity to address the alleged annuity or, as Husband described it, a retirement disability.

Husband asserted that he received a disability retirement benefit of $2,154 per month, pre-tax. After taxes are deducted, he netted $1,700 per month. Husband also described this benefit as "civil service retirement." Husband retired from the Federal Aviation Administration ("FAA") in June 1990, after having served in the Air Force for seven years, "worked for the Navy for about two years," and then was employed by the FAA, "for a total of 25 years." Husband was 60 years old.

Wife was 61 years old at the time of the hearing. She was receiving "over $600 a month" as Social Security disability benefits, which was reduced to $493 per month after a deduction for Medicare premiums.

Husband asserted further that "300 and some dollars" of Wife's rent was paid through HUD and that Wife received $100 in food stamps.

The trial court requested that both parties provide further evidence of their incomes, ordered the parties to exchange that information, and continued the hearing until a later date.

On November 2, 2007, both parties appeared in person and by counsel. Counsel met in chambers with the trial judge off the record prior to the case being called. A docket entry for that date indicates that a "Stipulation as to Facts given to court." In her brief, Wife asserts that "counsel for Petitioner and counsel for Respondent ... stipulated that the payment received by [Husband] as a result of his separation from the Federal Aviation Administration was called a 'disability pension annuity.' " Wife further claims that "[c]ounsel for both parties also provided information to the court in chambers, but that information was never admitted into the record."

On the record, Husband's counsel argued that Husband's monthly income was derived from a "disability pension annuity," which was non-marital, and that the court had no authority to divide any portion of the benefit. Wife's counsel argued that Husband transmuted his disability pension annuity into marital property when he elected to have Wife, as survivor, receive a percentage of his total benefit in the event of his death. Neither party offered any evidence. The trial court indicated its willingness to enter an interlocutory order of dissolution when either party provided an order to that effect and, just prior to adjourning the hearing, stated:

I'm going to leave the case open. You all—I'll look it over. I'll send you out what I think is going to happen and then when you get that, you can decide whether you want to call something else

up and submit something for the Court to enter its—and then—and then whichever party or both parties feel aggrieved, take it up with the higher court if you disagree with me.

On January 3, 2008, the trial court entered, by docket entry, the following Order:

Court did not receive Interlocutory Judgment. Court rules that [Husband's] Disability Retirement which is now permanent can be divided.

Court finds that [Husband] made an elective to allow his wife to be the survivor annuity beneficiary.

The court rules that the wife will receive a monthly amount from [Husband], shown each month. The exact amount to be agreed by parties or court will order. It will be in the form of maintenance. The amount or percentage of same will be non modifiable.

[Husband] will not be allowed to change his survivor beneficiary so if he dies before Respondent will be continue as her marital share of his disability retirement in whatever amount she would receive on his death as currently allowed by the plan.

If the [Wife] remarries payment will not stop. Respondent's Attorney to prepare formal order and judgment

If parties cannot agree on order or request additional evidence notice up trial setting date. Attorneys are to withdraw exhibits.

The case was again argued on September 23, 2008, although the record is unclear as to whether the attorneys appeared in person or via conference call, as no record was made of the conference. The trial court ordered the parties to submit proposed judgments within thirty days, after which the trial court would rule on the case.

The trial court filed a judgment of dissolution on November 20, 2008. The judgment dissolved the marriage of the parties and, although it is less than clear, apparently granted Wife maintenance in the amount of "thirty percent (30%) of [Husband's] gross monthly annuity under the Civil Service Retirement System." The trial court further ordered that Husband's assignment of Wife as survivor beneficiary under his annuity plan could not be changed and that Wife would be entitled to the same amount under the plan "as if the divorce had not occurred." It is unclear whether this order was a continuation of the maintenance award or whether it was made as a division of marital property. The only mention related to any property is a recital that "all marital property has been divided except for [Husband's] Disability Retirement Pension from the U.S. Government[.]"[1]

Husband filed a timely motion to amend the trial court's judgment on December 16, 2008. Therein, Husband alleged that the judgment "does not make any orders or judgments or decrees regarding how [the marital property] is to be divided[,]" and is not a final judgment until "it disposes of all issues including the manner in which the property is to be divided." Husband further alleged that the trial court improperly divided his "military disability retirement," and improperly awarded non-modifiable maintenance. No explicit ruling by the trial court on Husband's motion to amend appears in the record. *See* Rule 81.05(a)(2)(A).[2]

---

1. Upon remand the trial court should more clearly differentiate between its division of marital property and its award, if any, of maintenance. *See Vanderpool v. Vanderpool,* 250 S.W.3d 791, 795–97 (Mo.App.2008).

2. All references to rules are to Missouri Court Rules (2009).

On January 14, 2009, Wife filed a response and motion to dismiss Husband's motion to amend asserting, in part, "[t]hat the parties stipulated to this Court that all marital property had already been divided except for the disability pension." That same date, Wife further filed a motion to amend judgment nunc pro tunc, asking the trial court to amend the judgment with regard to the parties' social security numbers set forth therein, alleging that they had been reversed. On January 21, 2009, the trial court entered a judgment nunc pro tunc amending only the parties' social security numbers as Wife requested. No further after-trial motions were filed. On March 16, 2009, Husband filed this appeal.

## Discussion

■ Husband posits three claims of error directed to the trial court's classification and division of his "disability pension" and its award of maintenance to Wife. Wife responds, alleging that this court lacks statutory authority to hear this appeal, contending that Husband's notice of appeal was untimely filed and his appeal should be dismissed.[3]

While we agree that we do not have statutory authority here and that dismissal is necessary, it is not for the reason Wife argues. Here, there is no final judgment, as required by section 512.020, for appellate review. This is so because the trial court failed to divide martial property and debts incurred prior to dissolution that were in existence and that the trial court was made aware during a period of time within which it retained its authority to divide marital property and debts.

The case was heard by the trial court on Wife's counter-petition for dissolution,[4] paragraph six of which asserted "[t]hat there is non-marital property, marital property, and marital debts to be divided by the Court in a just and equitable manner in accordance with § 452.330 RSMO (2004)." Wife further alleged in the following paragraph "that the parties may be entering into a Marital Property Separation Agreement which, if executed, will be incorporated herein." As part of her prayer for relief, Wife requested an order or judgment "setting aside each parties' non-marital property and dividing the marital property and debts in a fair and equitable manner or in the alternative, accepting any marital property settlement agreements and incorporating them herein[.]" No such settlement agreement is mentioned or otherwise appears in the record. In Husband's responsive pleading to Wife's counter-petition, Husband admits the allegations contained in paragraph six of Wife's counter-petition, and requests that the trial court "divide the marital property and marital debts in a fair and reasonable manner."

3. Rule 75.01 provides that "[t]he trial court retains control over judgments during the thirty-day period after entry of judgment[,]" and under Rule 81.05(a)(1), unless an authorized after-trial motion is timely filed, a trial court's judgment becomes final thirty days after its entry. *In re Marriage of Singleton*, 188 S.W.3d 468, 471–72 (Mo.App.2006). Rule 81.05(a)(2) provides that where "an authorized after-trial motion is timely filed, a judgment becomes final at the earlier of the following: (a) ninety days from the date the last timely motion was filed, on which date all motions not ruled shall be deemed overruled; or (b) If all motions have been ruled, then the date of ruling of the last motion to be ruled or thirty days after entry of judgment, whichever is later." *Id.* (quoting *Berger v. Cameron Mut. Ins. Co.*, 173 S.W.3d 639, 640–41 (Mo. banc 2005)). Because Husband's motion to amend judgment was never explicitly ruled on by the trial court, Husband's appeal, had it otherwise been taken from a final judgment, was timely filed.

4. Husband had previously, with leave of court, dismissed his petition.

At the August 31, 2007 hearing, Wife indicated that a 1996 Oldsmobile was titled in her name, but she offered no valuation for it. Wife's counsel stated that "pretty much the parties have already divided all the marital property with the exception of one asset[,]" which counsel identified as "a federal annuity, a pension." Counsel advised the trial court that "there was some after-acquired property[,]"[5] however he proceeded to argue for an "opportunity to address marital misconduct concerning the division of the marital property if the Court does not divide the annuity or provide for maintenance for my client." Husband raised no objection to counsel's characterization of the property as "after-acquired," and then testified regarding two vehicles and a mobile home in his possession. The questioning then turned to details regarding Husband's retirement benefits, and the issue of the alleged "after-acquired property" was never raised again.

Husband filed an income and expense statement on October 25, 2007, in which he claimed a total monthly auto loan payment on two vehicles in the amount of $368.00. Also on the same date, Husband submitted a "Statement Of Marital And Non–Marital Assets And Debts Of Petitioner," listing a 1988 Chevy Corvette, a 2007 Chevy Impala, and a 1988 Skyline mobile home as his non-marital property. Docket entries do not reflect that Wife filed statements of income and expenses or property schedules, and none are contained in the record before this Court.

On appeal, neither party challenges the dissolution court's failure to divide the martial property and debts. Rather, Wife asserted in her post-trial motion and her responding brief on appeal "[t]hat the par-ties stipulated to this Court that all marital property had already been divided except for the disability pension." Such a stipulation, however, does not appear in the record before this Court. While Husband raised a claim that the dissolution court "does not make any orders or judgments or decrees regarding how [marital property] is to be divided[,]" in his motion to amend the judgment, he does not pursue that claim on appeal.

■■■ A determination of whether there is a final judgment is an issue we examine *sua sponte*, as the finality of a judgment is prerequisite to a valid appeal. *See In re Marriage of Rhoads*, 209 S.W.3d 24, 30 (Mo.App.2006). Section 452.330.1, RSMo 2000, provides in part that "[i]n a proceeding for dissolution of the marriage . . ., the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors[.]" Thus, " 'the trial court must make specific findings as to whether each asset before the court is marital property subject to division, is non-marital property to be set aside, or is property over which the dissolution court has no control.' " *Jonusas v. Jonusas*, 168 S.W.3d 117, 119 (Mo.App.2005) (quoting *Tauk v. Tauk*, 109 S.W.3d 188, 189 (Mo. App.2003)). "The court is then required to set apart to each spouse each spouse's non-marital property and to divide the marital property and debt as it deems just." *Jonusas*, 168 S.W.3d at 119. Such a distribution must be definite and capable of enforcement. *Id.* This statute provides no exception for a situation where the parties claim they have on their own divided property acquired during the marriage be-

---

**5.** Although not clear from the record, it appears from the context of these references in the record that the parties are referring to martial property acquired after the date of the parties' separation.

tween themselves, other than in the context of a written settlement agreement as provided in section 452.325. In the absence of such a writing, as in this case, the language of the statute is clear. The trial court is required to classify the property and then divide any marital property and debts. *See Michel v. Michel,* 94 S.W.3d 485, 488–89 (Mo.App.2003).

■■■■ A dissolution decree is final and appealable only when it disposes of all issues in the case. *Id.* at 488. "If the issue of undistributed property is discovered before the time for an appeal has expired, the appellate court, when faced with the issue, must dismiss the appeal because the lower court has not exhausted its jurisdiction and rendered a final judgment." [6] *In re Marriage of Singleton,* 188 S.W.3d 468, 471 (Mo.App.2006) (quoting *Teeter v. Teeter,* 114 S.W.3d 882, 883 (Mo.App. 2003)). Where we find that the judgment entered is not final, a dismissal of the appeal serves " 'to recognize the jurisdiction of the trial court to enter a new judgment covering the entire case.' " *Id.* Where the trial court has not been divested of its authority to act, as here, it "retains control over every phase of the case so that it may correct errors, or, in its discretion, modify or set aside orders or judgments until its jurisdiction is extinguished by the judgment becoming final and appealable." *Jonusas,* 168 S.W.3d at 121.

### Decision

Because the trial court's judgment is not a final judgment in that it fails to divide all of the parties' property and debts, we dis-

miss the appeal. *See Singleton,* 188 S.W.3d at 473.

RAHMEYER, J., and QUITNO, J., concur.

---

6. The word "jurisdiction" in cases quoted in this opinion that were decided before *J.C.W. ex rel. Webb v. Wyciskalla,* 275 S.W.3d 249 (Mo. banc 2009), is used and quoted as found in those cases, in reference to the court's statutory or rule authority to act, and not in the context of the constitutional concept of jurisdiction as explained in *Webb.*